I concur in all of the views expressed in the majority opinion with the exception of the conclusion reached with respect to the status of the plaintiff at the time he sustained the injury. It is my opinion that the evidence clearly shows the plaintiff was, at that time, on a mission of his own, and was not acting on behalf or in the interest of his employer.

**54 So.2d 125**

## BOARD OF COM'RS OF TENSAS BASIN LEVEE DIST. v. FRANKLIN et al.
### No. 39793.

May 28, 1951.

Rehearing Denied June 29, 1951.

Appeal Dismissed Oct. 15, 1951.

See 71 S.Ct. 80.

Warren Hunt, John C. Morris, Jr., Rayville, for defendants-appellants.

Harry N. Anders, Dist. Atty., Winnsboro, John F. McCormick, Monroe, C. C. Wood, Baton Rouge, for appellee.

PONDER, Justice.

The plaintiff brought suit against the defendants seeking to enjoin them from interfering with the works being done on the Little Bayou Boeuf drainage project. At the hearing of a rule nisi for a preliminary injunction, all the evidence was adduced and the opposing parties agreed that judgment be rendered on the merits of the case. The trial court gave judgment granting a permanent injunction. The defendants have appealed.

In 1946, the Chief Engineer of the Department of Public Works of this state advised, by letter, the President of the Mississippi River Commission that certain streams in Louisiana, including Little Bayou Boeuf were greatly in need of clearing and snagging and asking for them to be

included in his program. It appears that the Mississippi River Commission is an agency whose duty it is to keep Congress informed as to conditions and to make recommendations for flood control upon the reaches of the Mississippi River. Approximately a year later, the Board of Commissioners of the Tensas Basin Levee District was advised by the Department of Army Corps of Engineers, New Orleans Office, that $25,000.00 had been allocated by the Secretary of War, under the provisions of the Flood Control Act, 33 U.S.C.A. § 701 et seq., for the cleaning, snagging and straightening the channel of Little Bayou Boeuf, Morehouse and Ouachita Parishes, from its mouth to Perryville, provided there be furnished "satisfactory assurances of local co-operation which levee boards are authorized to furnish on drainage projects as well as on levee improvements." The Chief Engineer of the Department of Public Works informed the board by letter in 1948 that the location and plan of the proposed work, showing limits of the rights-of-way required, had been examined and approved by the district engineer of the department and recommended that the necessary rights-of-way be furnished. By resolution, dated March 8, 1949, the Levee Board formally agreed to the conditions imposed by the Corps of Engineers and notified the property owners by registered mail on April 1, 1949 that the rights-of-way were appropriated across their lands; among those notified were the defendant, George B. Franklin and Chess & Wyman Company. George B. Franklin, Jr. subsequently acquired from Chess & Wyman Company the property through which this bayou runs.

Pursuant to the assurances furnished by the Levee Board, the Secretary of the Army made a contract with the Delta Equipment & Construction Company for the improvement of the channel of Little Bayou Boeuf. After the work had progressed to a point on lands claimed by the appellants, the contractor was forcibly prevented by the appellants from proceeding further with the work. The Levee Board brought this suit to restrain the appellants from interfering with the construction of the works.

From the maps offered in evidence and the testimony of the District Engineer of Public Works, it appears that the improvement of the channel of Little Bayou Boeuf will facilitate the flow and drain of waters from the Partholomew Levee. The District Engineer, who acts in an advisory capacity to the Levee Board, testified the improvement would remedy the situation existing at Bayou Bartholomew. He described the Horse Bayou condition as a bad one which has not only affected the security of the levee but has in recent years inundated considerable farm lands and an important highway. He stated that the Police Jury has awarded a contract for a canal that will further hasten the flow of waters from the vicinity of Horse Bayou into the watershed of Little Bayou Boeuf, which makes the over-all improvement of Little

Bayou Boeuf more important. The Levee Board takes the position that the area north of Bastrop can only be drained through flood gates situated where Horse Bayou intersects the levee on the left descending bank of Bayou Bartholomew and this drainage, during seasons of lower water in Bayou Bartholomew, flows through these flood gates by force of gravity, while, during periods of high water in the bayou, the drainage in the area flows southerly through Little Bayou Boeuf into Bayou LaFourche. The board takes the position that the construction of the levee on the left descending bank of Bayou Bartholomew, during periods of high water, when the flood gates are necessarily closed, has created a serious drainage problem, resulting in the land-side of the levee being submerged by water, thus making it impossible to detect sand-boils and weak spots in the levee and that the diversion of the water caused by the construction of the levee has brought about the inundation of considerable farm lands in the vicinity of Horse Bayou and has raised the level over lands over which the water is forced to travel along the course of Little Bayou Boeuf to Bayou LaFourche. The board states that the improvement program on Little Bayou Boeuf will provide drainage that would minimize or eliminate the high water stages on Bayou Bartholomew.

 The evidence offered for the plaintiff shows that the Levee Board and the Department of Public Works consider this drainage project is a necessary part to an over-all drainage plan for the area and that it is necessary for the protection of the Bayou Bartholomew Levee. We cannot substitute our judgment as to the feasibility of the project or say that it is unrelated to the Bartholomew Levee. To do so, we would have to reject the testimony of the District Engineer of the Department of Public Works. It is hard to believe that the United States Government would have appropriated the money if it were not necessary for flood control. Moreover, the Levee Board has great latitude in locating levees with the right to protect them in a manner found to be most expeditious from an engineering, economical and practical standpoint. Its action is jurisdictional and is not subject to review unless there has been some palpable abuse. Dickson v. Board of Commissioners of Caddo Levee District, 210 La. 121, 26 So.2d 474, and authorities cited therein.

 The defendants contend that the plaintiff has no authority in law to appropriate the property involved in this suit. They take the position that the plaintiff can only obtain this property through expropriation proceedings. Their contention is based on their argument that Article 665, Revised Civil Code, and Section 6 of Article 16 of the Constitution do not grant the plaintiff authority to appropriate property not situated on navigable streams. They say that an interpretation of this constitutional provision, when construed with a

provision of a prior Constitution, Article 312 of the Constitution of 1898, demonstrates that this provision of the present Constitution deals only with the right of compensation. It is further argued that this provision of our Constitution does not extend the servitude granted under Article 665, R.C.C., to property not situated along navigable streams. To support their contention that the right of appropriation is governed by Article 665, R.C.C., they cite Dickson v. Board of Commissioners, supra. We have carefully examined the opinion in that case and find that it reviews the history of this article of the Civil Code and laws enacted to protect our state from flood waters. In view of the fact that the drainage of most of the Mississippi Valley flows through this state and the further fact that our state has many streams and natural drains, flood control is very vital to our welfare. Our lawmakers have been enacting, from time to time, progressive measures to prevent and to minimize the damage caused by flood waters. Article 665, R.C.C., has been interpreted to apply not only to property actually adjoining the river edge but to all of that which is within range of the reasonable necessity of the situation as produced by the forces of nature unaided by artificial causes. Wolfe v. Hurley, D.C., 46 F.2d 515, affirmed 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423. While the issue presented in this case is different from that presented in the case of Dickson v. Board of Com'rs, supra, the reasons given for the decision and the

statements made therein support the construction placed on this article of the Code by the federal court. A construction of this codal article so as to apply only to the shores of navigable streams would be too narrow and defeat the purpose sought to be obtained. It would be useless to build a levee if it could not be protected. But be that as it may, when the codal article is construed with Act 61 of 1904, LSA–RS 38:113 et seq., and Act 66 of 1942, LSA–RS 38:281, it is apparent that the plaintiff had ample authority to appropriate this property. Moreover, if there were any doubt as to the authority of the plaintiff to appropriate this land under the codal article and statutes, the plaintiff had ample authority under Section 6 of Article 16 of the Constitution of this state which authorizes the appropriation of property used or destroyed for levee drainage purposes. What is necessary for levee drainage purposes is a question of fact and, as pointed out above, Levee Boards have the responsibility of providing sufficient levees and levee drainage to relieve the state from the hazards of flood waters. They make a study of flood control and have the benefit of the advice and assistance of officials of the United States Government, including the Mississippi River Commission and the Army Corps of Engineers, and also the Department of Public Works. Since no palpable abuse has been shown, we cannot substitute our judgment as to the feasibility of the levee drainage project when these ex-

perts, after a careful study of the situation have arrived at the conclusion that it is necessary for levee drainage. We cannot agree that Article 312 of the Constitution of 1898 aids in the construction of Section 6 of Article 16 of our Constitution. This article of the previous Constitution deals with compensation of property appropriated by the Orleans Levee Board.

The defendants contend that the drainage project is the construction of a new canal across their property and that the provisions of Act 61 of 1904 are not applicable. It appears that Little Bayou Boeuf is a natural drain. But be that as it may, as pointed out above, the board had ample authority under our Constitution to appropriate lands found to be necessary for levee drainage.

■ The defendants contend that the drainage canal is primarily constructed to care for the water flowing from the settling basin of the International Paper Company and that their property is being taken for a private purpose. We have examined the record and find no substantial evidence to support the contention. In fact, the evidence overwhelming refutes it.

■ The defendants contend that the appropriation of the property is a violation of the due process clause of the federal Constitution, Amend. 14. We pointed out in the case of Dickson v. Board of Com'rs, supra, [210 La. 121, 26 So.2d 479] that "Despite the repeated contention in nu-merous litigations that Article 665, imposing this servitude on riparian lands, controverts the constitutional guarantee in both the state and federal Constitutions that no one can be deprived of his inalienable rights of property without due process of law, it has been consistently held by this court and by the Supreme Court of the United States that such constitutional requirements relate to the right of expropriation and do not have the effect of abrogating our law giving the state authority to appropriate land upon which rights for the construction of levees, roads, and other such public works have always been reserved."

■ In the case of Wolfe v. Hurley, supra, it was held that the provision in our state Constitution, Section 6 of Article 16, fixing the assessed value as the maximum price to be paid for lands appropriated for levee and levee drainage purposes was not repugnant to the due process clause of the federal Constitution.

For the reasons assigned, the judgment is affirmed at appellants' cost.

HAWTHORNE, Justice (dissenting from refusal to grant a rehearing).

The effect of the decision in this case is to extend the servitude established by Article 665 of the Civil Code beyond the limits prescribed for it by the jurisprudence of this court of the last 50 years, or to hold that the servitude has been extended by Article 16, Section 6, of the Louisiana Constitution, so as to make subject to it any prop-

erty in the State of Louisiana which a levee board may deem necessary for levees or levee drainage, and that consequently such property may be appropriated. Under Article 665 a servitude is imposed on property *adjacent* to a navigable stream, and such property may be appropriated because in this state it has always been reserved to the public and is always acquired subject to the servitude. See Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490. Can it be said that property situated 17 miles from a navigable stream is adjacent to it and subject to appropriation by the levee board for the purpose of digging a drainage canal for levee drainage?

·If Article 16, Section 6, extended the servitude recognized in Article 665 of the ·Code, and the property in the instant case is burdened with such servitude (of this I have grave doubt), and the levee board has the right to appropriate it, then does our constitutional article violate the provision of the Fourteenth Amendment to the United States Constitution that no state shall deprive any person of property without due process of law? Article 16, Section 6, of the Louisiana Constitution fixes the price for property actually used or destroyed for levees or levee drainage at the assessed valuation, but, as pointed out in Wolfe v. Hurley, D.C., 46 F.2d 515, affirmed by the United States Supreme Court, 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423, the price so fixed is nothing but a gratuity because the state had a right to appropriate property adjacent to navigable streams without any compensation under Article 665. The assessed value certainly is not just and adequate compensation.

The right of the levee board to *expropriate* the property to be used for the drainage canal is not questioned. The serious question here presented is whether the property because of its nature and location was acquired subject to the servitude imposed by Article 665. If so, the levee board may appropriate it without violating the provision of the United States Constitution.

Since I consider that a serious federal constitutional question is involved, I am of the opinion that a rehearing should have been granted so that this court might give further consideration to the question.