414 So.2d 805 (1982)
Ellis A. TERREBONNE, Edith T. Rodrigue and Georgina D. Terrebonne
v.
SOUTH LOUISIANA TIDAL WATER CONTROL LEVEE DISTRICT.
No. 14753.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
Rehearing Denied June 23, 1982.
*806 Stanley L. Perry, Galliano, for plaintiffs-appellants Ellis A. Terrebonne, et al.
Harwell Herrin, Golden Meadow, Jerald Block, Thibodaux, J. J. Erny, Larose, for defendant-appellee South Louisiana Tidal Water Control Levee Dist.
Michael O. Hesse, Baton Rouge, amicus curiae.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
LOTTINGER, Judge.
This is a suit for a declaratory judgment. The plaintiffs, Ellis A. Terrebonne, Georgina D. Terrebonne, and Edith T. Rodrigue, *807 sought judgment declaring invalid an appropriation of land owned by plaintiffs by the defendant South Louisiana Tidal Water Control Levee District[1] (hereinafter "Levee District.") The Levee District defended the suit, claiming that plaintiffs' lands were properly appropriated under La.C.C. art. 665. Following trial on the merits, the trial court upheld appropriation under La.C.C. art. 665. The plaintiffs have appealed.
The suit for declaratory judgment arose when the defendant Levee District, by resolution of November 4, 1975, appropriated two tracts of land in Lafourche Parish in Sections 23 and 24 of Township 19 South, Range 21 East, measuring 6.52 acres and 1.18 acres respectively, and owned by the Estate of Uylesses J. Terrebonne.[2] The appropriations were made for the right-of-way for a hurricane protection levee constructed as part of the Larose to Golden Meadow Hurricane Protection System. The levee built across plaintiffs' land was part of a ring levee system constructed for flood control of lands along the lower section of Bayou Lafourche in Lafourche Parish.
The inhabited areas near Bayou Lafourche in Lafourche Parish are generally low lying areas subject to flooding during periods of heavy rainfall or high tides. The Bayou Lafourche area is in extreme south central Louisiana and is often the target for hurricanes and lesser tropical storms coming from the Gulf of Mexico. Tropical storms have caused severe flooding in the Larose-Golden Meadow area, especially within the town of Golden Meadow. Flooding occurs whenever Bayou Lafourche overflows its banks, and also may occur when storms cause tidal surges of high water from the Gulf and its bays to cross open marshlands and flow into inhabited areas.
The ring levee system was designed to prevent flooding from Bayou Lafourche and to prevent flooding caused by tidal surges of backwater from the marshlands.
The ring levee system used in the Larose to Golden Meadow Hurricane Protection Project will be composed of levees and floodgates. Floodgates will be constructed in Bayou Lafourche itself at the north end of the project in Larose and at the project's south end two miles below Golden Meadow. The floodgates will close during periods of high tides, restricting the flow of water up Bayou Lafourche from the Gulf. A "ring" of levees will be constructed around the entire populated area, preventing water from entering from across the marshlands. The levees and floodgates are designed to work in unison to prevent flooding from all sources.[3]
Thus the ring type levee is unusual in that it does not lie immediately adjacent to any water body.[4] To serve its purposes, the ring levee is situated some distance from a river or stream. In the area of the plaintiffs' property, the protection levee lies parallel to Bayou Lafourche, at or near the traditional Forty Arpent Line. This means that across plaintiffs' lands, the protection levee runs approximately 7,234 feet west of the bayou.
Subsequent to the appropriation of the two tracts in question, the defendant Levee District tendered the previous year's assessment value of the property pursuant to the provisions of Louisiana Constitution of 1974, Art. XIV, § 32 and Louisiana constitution of 1921, Art. XVI, § 6, in the sum of $24.87 as full compensation to the plaintiffs. Louisiana Constitution of 1974, Art. XIV, § 32 provides that the provisions of Louisiana *808 Constitution of 1921, Art. XVI, § 6 shall be continued in effect as a statute subject to and until changed by the legislature. Louisiana Constitution of 1921, Art. XVI, § 6 sets the measure of compensation for the taking of lands for levee purposes at a price not to exceed the assessment value of the property for the preceding year. The plaintiffs sent back the tender and filed the instant action for a declaratory judgment that the appropriation was invalid.[5]
The plaintiffs alleged in their original petition that the two tracts appropriated were not subject to the public servitude of La.C.C. art. 665, and that the appropriation was made without due process of law and without the payment of just compensation. Plaintiffs further alleged that La.C.C. art. 665 was unconstitutionally vague in not permitting a landowner to accurately determine the precise location of the levee servitude. The plaintiffs also alleged that they were denied equal protection of the law in that they were tendered assessment value only for their property while other similarly situated landowners were paid full market value for rights-of-way by the Levee District.
The defendant Levee District answered with a general denial, and urged that La. C.C. art. 665 applied to the tracts in question. The Levee District reserved in the alternative the right to expropriate the necessary rights-of-way.
Plaintiffs then supplemented and amended their petition to assert a cause of action for fair market value under La.R.S. 38:281, as amended by Act 314 of 1978.[6] The Levee *809 District filed the dilatory exception of vagueness, which was overruled. The defendant then answered with a general denial and in the alternative alleged the unconstitutionality of Act 314 of 1978. In accordance with La.C.C.P. art. 1880, the Levee District caused the Louisiana Attorney General to be cited and served with all pleadings, so as to be heard with regard to the alleged unconstitutionality of Act 314 of 1978.
The Attorney General submitted a memorandum on the issue, arguing that the benefit of fair market value afforded by Act 314 of 1978 to pending suits was retracted by Act 676 of 1979,[7] that both acts were remedial *810 in nature, and that both could be applied retroactively without unconstitutionally impairing vested rights.
The trial court ruled in favor of the defendant Levee District, dismissing plaintiffs' suit at their cost. The trial court held that La.C.C. art. 665 was not unconstitutionally vague and that the article did apply to the two tracts in question. The trial court also held that plaintiffs failed to prove their claim of unfair discrimination and denial of equal protection of the law. The trial court further held that the benefit of fair market value in pending suits afforded by Act 314 of 1978 was effectively abated by Act 676 of 1979, citing Dripps v. Dripps, 366 So.2d 544 (La.1978). Plaintiffs moved timely for a devolutive appeal to this court.

SPECIFICATIONS OF ERROR
Plaintiffs-appellants have assigned numerous specifications of error, which can be crystallized into three main arguments on appeal:
1) The trial court committed error by applying the La.C.C. art. 665 riparian servitude to uphold appropriation of tracts forty arpents distant from a navigable river or stream.
2) The trial court committed error in refusing to find discriminatory treatment by the Levee District, and in refusing to allow introduction of evidence tending to show preferential treatment of other landowners whose property was similarly situated to that of plaintiffs.
3) The trial court committed error in holding that the benefit of full market value in pending suits afforded by Act 314 of 1978 was effectively retracted by Act 676 of 1979.

I
Plaintiffs-appellants argue that the tracts appropriated by the Levee District are not subject to the riparian servitude. They assert that the applicable jurisprudence demonstrates that the requirements for appropriation under La.C.C. art. 665 are not present under the factual circumstances surrounding this controversy.
Louisiana Civil Code Article 665 reads:
"Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable *811 rivers, and for the making and repairing of levees, roads and other public or common works.
"All that relates to this kind of servitude is determined by laws or particular regulations."
The constitutionality of Article 665 was upheld in Eldridge v. Trezevant, et al., 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (1896), where the United States Supreme Court held that the article was not violative of due process or equal protection of the law as long as it was administered impartially.
Article 665 provides a servitude in favor of the public upon lands adjacent to navigable rivers and streams for the construction and maintenance of levees. Article 665 has received varying interpretations in our jurisprudence. At one time the power to appropriate was considered to be extremely broad. In Board of Commissioners of Tensas Basin Levee District v. Franklin, 219 La. 859, 54 So.2d 125 (1951), appeal dismissed per curiam, 342 U.S. 844, 72 S.Ct. 80, 96 L.Ed. 638 (1951), the Louisiana Supreme Court upheld appropriation of land that was seventeen miles away from the nearest navigable stream. The Supreme Court therein held that the riparian servitude applied not only to property adjoining the river bed, but to all property needed for levees within the range of reasonable necessities of the situation as produced by the forces of nature, unaided by artificial causes.
The scope of Article 665 was narrowed in Delaune v. Board of Commissioners for the Ponchartrain Levee District, 230 La. 117, 87 So.2d 749 (1956). In Delaune, the Supreme Court held that the property appropriated in addition to being "within the range of the reasonable necessities of the situation," Franklin, supra, must also have been riparian property when it was separated from the public domain. The burden of proving the riparian character of the land as a prerequisite to acquiring the servitude falls upon the appropriating body. Board of Commissioners of the Pontchartrain Levee District v. Baron, 236 La. 846, 109 So.2d 441 (1959); Taylor v. Board of Levee Commissioners of Tensas Basin Levee District, 332 So.2d 495 (La.App. 3rd Cir. 1976).
In A. K. Roy, Inc. v. Board of Commissioners for the Pontchartrain Levee District, 237 La. 541, 111 So.2d 765 (1959), the tract of land for which appropriation was sought was part of a tract which was riparian to the Mississippi River when separated from the public domain. However, the levee to be built was for the purpose of preventing flooding from Lake Pontchartrain. The Louisiana Supreme Court stated:
"It would appear from the pleadings and argument and briefs of counsel in this court that the principal question urged in the lower court, other than the one just disposed of, was the effect of our recent decision in the case of Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749, on the facts of the case at bar.
"Defendant has failed to meet the test enunciated in that case. Although it is conceded by plaintiff that the property was part of a large tract, which, at the time of its severance from the public domain, bordered the Mississippi River, there was no showing that the purpose for which the property was taken had any relation whatsoever to control of the flood waters of the Mississippi River `within the range of the reasonable necessities of the situation as produced by the forces of nature unaided by artificial causes.'" (Emphasis supplied). 111 So.2d 767.
We agree with our brethren of the Second and Third Circuits that A. K. Roy, Inc., supra, requires that the levee must be necessary for the control of flood waters from the river or stream to which the land is riparian. See Stevenson v. Board of Levee Commissioners of Tensas Basin Levee District, 353 So.2d 459 (La.App. 3rd Cir. 1977), writ ref., 355 So.2d 266 (La.1978); Taylor v. Board of Levee Commissioners of Tensas Basin Levee District, supra; Grayson v. Commissioners of Bossier Levee District, 229 So.2d 139 (La.App. 2nd Cir. 1969). See also United Gas Pipeline Company v. Lafourche Parish Police Jury, 338 F.Supp. 1296 (E.D.La.1972) for a similar interpretation *812 of A. K. Roy, Inc., supra, by the federal court in New Orleans. We are of the opinion that the requirement that the levee operate to control flood waters from the river or stream to which it is riparian is an inevitable corollary of the "reasonable necessities" requirement of Delaune and Franklin, supra.
Applying the requirements of A. K. Roy, Inc., supra to the case at bar, we find that the Levee District proved the riparian nature of the tracts in question. The Levee District introduced into evidence a certified copy of a survey map of Township 19 South, Range 21 East of the South Eastern District of Louisiana, drawn by federal deputy surveyors during the winter of 1831 and approved by the surveyor's office in Washington D. C. on January 14, 1832. The survey map shows that Section 23 and 24 of Township 19 South, Range 21 East, within which lie the two tracts which are the subject of this suit, lie immediately adjacent to Bayou Lafourche. The Levee District introduced expert testimony to the effect that the lower section of Bayou Lafourche is navigable and has been considered navigable since 1803, when the area formed a part of the Louisiana Purchase from France by the United States. The Levee District further introduced a certified copy of an excerpt from the United States Tract Book Records, showing a transfer of Sections 23 and 24 to the State of Louisiana, effective August 1, 1854. Finally, the Levee District introduced a certified copy of an excerpt from the Louisiana State Tract Book Records showing a sale of the entirety of Sections 23 and 24 to private individuals on June 10, 1857, and March 5, 1861 respectively. We hold that this evidence proves conclusively that the two tracts in question were part of larger tracts which were riparian at the time they were separated from the public domain.
The greatest amount of testimony in the trial court centered around the second and third requirements of A. K. Roy, Inc., supra, for appropriation under Article 665, that is, whether the tracts taken are within the range of reasonable necessities to prevent flooding from the river or stream to which they are riparian. The plaintiffs elicited lay testimony to the effect that the new protection levee near the area of the plaintiffs' property runs generally along the same line as a prior levee owned by the Lafourche Parish Police Jury. The police jury levee was a small levee erected primarily for the purpose of land reclamation. The plaintiffs introduced testimony that the old police jury levee had fractured many times under pressure from high tides of the marshlands to the west, causing intensive flooding of pasture lands. It is the plaintiffs' claim that the protection levee located forty arpents or 7,234 feet from Bayou Lafourche is intended primarily to control backwater flooding over the marshes, and is not intended or expected to prevent Bayou Lafourche from overflowing its banks. The plaintiffs adduced testimony that flooding from the west covered a larger area and presented a greater danger to plaintiffs' property than did flooding from Bayou Lafourche. Flooding from the west has spilled over and through the police jury levee and advanced to within nine hundred feet of Bayou Lafourche, or some 6,000 feet from the Forty Arpent Line. On the other hand, at the plaintiffs' property, somewhat north of the town limits of Golden Meadow, overflow from Bayou Lafourche has been limited to an area less than one hundred fifty feet from the banks. Plaintiff Ellis A. Terrebonne testified that water from Bayou Lafourche has covered Louisiana Highway One in front of his home, and has encroached upon his front lawn, but has never threatened to flood his house, which fronts the highway. The plaintiffs contend that the tracts appropriated at the Forty Arpent Line were taken to build a levee which protects from backwater flooding. Thus, plaintiffs claim that since the protection levee will not protect from flooding from the river or stream to which the tracts are riparian, Civil Code art. 665 does not apply, and appropriation at assessment value was invalid.
The defendant Levee District introduced testimony to the effect that the town of Golden Meadow had completely flooded *813 during hurricanes, necessitating total evacuation of the town. Water has gone into homes quite a distance from Bayou Lafourche. The flooding during hurricane season in Golden Meadow came from Bayou Lafourche, and not from tidal surges from the west. A seawall was constructed in Golden Meadow along Bayou Lafourche in 1974, which has not totally ameliorated the problem of flooding from the bayou. Louisiana Highway One at times had been closed as far north as the Galliano bridge because waters from the bayou inundated the road. The Levee District pointed out that this closure included the highway in front of plaintiffs' homes. The Levee District contends that the ring levee system used in conjunction with flood gates in Bayou Lafourche will prevent flooding from the bayou and also from across the marshlands. The defendant asserts that the entire system of levee protection should be considered a working unit, which as a whole will prevent flooding from the river or stream to which plaintiffs' lands are riparian.
The preponderance of the expert testimony weighs in favor of the defendant Levee District. Cecil Soileau, an expert in hydrology and hurricane project planning and coastal engineering, testified at trial. Mr. Soileau is also a civil engineer with the U. S. Army Corps of Engineers and has studied extensively the effects of hurricane tidal surges. It was his expert testimony that a theoretical hurricane hitting Timbalier Bay west of Bayou Lafourche would cause two tidal surges. The first surge would travel up Bayou Lafourche from the Gulf, taking the bayou as the path of the least resistance. The effects of this surge would be felt quickly up and down the bayou. A second tidal surge from Timbalier Bay to the west would come later, after the surge up the bayou. This western surge would cover a greater area and necessarily would carry more water. The western surge would help mask the surge of water up Bayou Lafourche, but would also threaten populated areas on the west bank of the bayou, where plaintiffs' property is situated. Mr. Soileau testified that the ring levee system would protect the population from both surges of the theoretical hurricane. The project was designed to safeguard the area from flooding from any direction.
Mr. Soileau was cross-examined thoroughly as to the relative functions of the protection levee and the floodgates in the bayou. He testified that shutting the floodgates in the bayou was the method of preventing Bayou Lafourche from overflowing its banks. However, Mr. Soileau testified that without the connecting ring levee, water from the bayou would build up at the floodgate area, flow over the bank of the bayou, find a path around the gates, and return to the bayou to continue upstream. It was Mr. Soileau's expert testimony that without the complete enclosure of the area by the ring of levees, water from the bayou would find a way to return to the bayou after being turned away by the floodgates. In light of this expert testimony, we are convinced the trial judge was correct in holding that the ring levee was necessary to prevent flooding from Bayou Lafourche. Canter v. Koehring Company, 283 So.2d 716 (La.1973). Because the lands taken were necessary to prevent flooding from the stream to which they are riparian, appropriation by the Levee District at the assessed value was proper under La.C.C. art. 665. A. K. Roy, Inc. v. Board of Commissioners for Pontchartrain Levee District, supra.
Plaintiffs-appellants cite Stevenson v. Board of Levee Commissioners, supra, writ ref., 355 So.2d 266 (La.1978) as being very similar to the instant case. In Stevenson, the plaintiffs were owners of tracts which were appropriated in connection with the construction of a ring levee around the city of Jonesville in Catahoula Parish, which city is located at the intersection of Little River and Black River. The Third Circuit upheld judgment of the trial court granting plaintiffs fair market value of the land taken, because evidence demonstrated that the ring levee was constructed solely to prevent flooding from backwaters forming the normal drainage of the area. The court found that the ring levee was not built to *814 hold either of the navigable rivers within their banks, and denied the riparian servitude on that basis, citing A. K. Roy, Inc., supra.
The instant case is readily distinguishable from Stevenson, supra. In Stevenson, the two rivers in question already had levees on their banks prior to construction of the ring levee around the populated area. The existence of the levees on the banks of the navigable rivers was clearly for protecting from the overflow of the rivers. Thus, there could be no contention in Stevenson, supra, that the ring levee was in any way intended to hold the navigable rivers in their banks. In the case sub judice, levees cannot be built along the banks of Bayou Lafourche. Expert testimony was adduced to show that the ring levee would serve to help protect the area from the overflow of Bayou Lafourche, in that the levee would prevent water building up at the flood gates from diverting around the gates and returning to the bayou to flow upstream. We hold that Stevenson, supra, is not controlling of the case sub judice.
For the above and foregoing reasons, the plaintiffs' contention that the jurisprudential requirements for applying La.C.C. art. 665 are not present under the facts of this case is without merit.

II
Plaintiffs-appellants assert that they have been denied equal protection of the law because the Levee District has taken their land by appropriation while paying full market value to other landowners similarly situated.
In connection with this assertion, plaintiffs attempted to introduce into evidence several acts of sale, whereby the Levee District purchased rights-of-way for the protection levee from other landowners in the area. The plaintiffs also attempted to introduce rights-of-way maps drawn by the Levee District to show the location of the tracts mentioned in the sales of rights-of-way. In this fashion the plaintiffs attempted to show that the Levee District had paid fair market value to other similarly situated landowners. However, the trial court refused to allow this evidence to be introduced, on the basis of the evidence's irrelevancy to the issues in dispute. Plaintiffs put forth this evidence in a proffer of proof.
After having examined plaintiffs' proffer, we hold that the evidence was correctly excluded by the trial court. There was no evidence adduced by the plaintiff that any of the tracts sold for fair market value by other landowners to the Levee District were riparian in nature. The copies of rights-of-way maps proffered to show the locations of these tracts could not have proven the riparian character of these tracts because the rights-of-way maps are not surveyed and do not even show the path of Bayou Lafourche across the map in many places. (Nor were the copies proffered certified.) Because the rights-of-way maps proffered are not surveyed, they cannot be used to determine the riparian character of the tracts shown therein.[8] The tracts in question are within a different township than the tracts owned by plaintiff, so plaintiffs cannot benefit from the subsequent introduction of the surveyed map of Township 19 South, Range 21 East into evidence, which the defendant used to prove the riparian nature of plaintiffs' lands. Because there was no proof that the tracts mentioned in plaintiffs' proffer were riparian, the evidence was properly excluded as not relevant.
The lack of evidence of the riparian character of these other tracts also precludes showing that preferential treatment was accorded to similarly situated landowners. Thus, plaintiffs' equal protection claim is without merit.

*815 III
Plaintiffs-appellants assert that they have a viable cause of action for full market value under La.R.S. 38:281 as amended by Act 314 of 1978, and that the trial court erred in holding same abated by Act 676 of 1979.
In 1978, by Act 314, the legislature amended La.R.S. 38:281 to set the measure of compensation for the taking of lands for levee purposes at the fair market value. Section B thereof further provided as follows:
"The compensation defined herein shall apply to all lands and improvements taken, damaged or destroyed for levee and levee drainage purposes after the effective date of this Act, and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes." (Emphasis supplied).
In 1979, the legislature again amended La.R.S. 38:281 this time deleting, among other parts, the italized portion of Act 314 to provide as follows:
"The compensation defined herein shall apply to all lands and improvements appropriated, used, or damaged for levees and levee drainage purposes after the effective date of this Act, and to lands appropriated, used, or damaged for levees and levee drainage purposes after July 10, 1978."
The plaintiffs contend that Act 314 of 1978 expressly set out firm substantive rights in their favor, inasmuch as their suit was filed April 25, 1977, and was pending as of July 10, 1978. Thus, they argue that to apply Act 676 of 1979 retrospectively so as to retract the substantive rights granted by Act 314 of 1978, was an impairment of vested rights violative of La.C.C. art. 8 and Art. I, § 23 of the Louisiana Constitution of 1974.
The Louisiana Supreme Court in Ardoin v. Hartford Accident and Indemnity Company, 360 So.2d 1331 (La.1978) held that the general principle of non-retroactivity as stated by La.C.C. art. 8 was subject to three exceptions: laws that merely suppress or lessen penalties, laws that are merely interpretive of existing legislation, and laws that the legislature has expressly or impliedly declared to be retroactive. According to the interpretation of the court in Ardoin and cases cited therein, Article 8 of the Civil Code contemplates substantive laws as distinguished from merely procedural or remedial laws which will be given retroactive effect in the absence of language showing a contrary intention.
Act 314 of 1978 mandated the payment of fair market value in situations where lands and improvements were actually used or destroyed for levees. Article XIV, § 32 of the 1974 Constitution continued as a statute the payment of assessed value for lands used or destroyed for levee purposes until such time as the legislature enacted a law to effectuate Art. VI, § 42. Article VI, § 42 allowed the legislature to provide by law the payment for lands destroyed or used for levee purposes. Act 314 of 1978 was the legislature's attempt to effectuate Article VI, § 42, by providing full market value to landowners. As such, Act 314 of 1978 does establish substantive rights. However, we hold that the retroactive effect of Act 314 of 1978 on pending suits in expropriation or appropriation cases is not a substantive right, but rather is a procedural device concerned with application of the act itself, rather than the substantive rights granted therein. To hold that the retroactive effect of Act 314 on pending appropriation suits is a substantive right rather than a procedural matter would mean that Act 314 might attempt to create substantive rights based on matters which occurred prior to the effective date of the Constitution, which would itself be violative of Article XIV, Section 26. In other words, if the retroactive application of Act 314 to pending appropriation suits is deemed a substantive matter, Act 314 might be unconstitutional in purporting to create substantive rights based on events occurring prior to the Constitution's effective date, violating Article XIV, Section 26. However, because *816 Act 314 of 1978 applies the substantive provisions of the act to pending appropriation suits, we hold that this retroactivity provision is procedural in nature.
The possibility of an unconstitutional interpretation of La.R.S. 38:281 as amended by Act 314 of 1978 was the impetus behind the legislature's passage of Act 676 of 1979. This is evidenced by the title of the 1979 legislation, which preceded Act 676 and noted in part:
"WHEREAS, the Legislature of Louisiana enacted Act 314 of 1978 which contained provisions which were vague and indefinite particularly with respect to its retroactive application and with respect to lands used or destroyed for levees and levee drainage purposes for which fair market value must be paid; and..."
In light of this language, we hold that Act 676 of 1979, which deleted the provision relating to pending appropriation suits, is interpretive legislation which does not create new rules, but merely establishes the meaning which Act 314 of 1978 had from the time of its enactment. As noted in Ardoin, supra, this interpretive legislation is accorded retrospective effect unless it operates to disturb already vested rights.
We have already ruled, however, that the portion of Act 314 directing the application of substantive portions of the act to pending appropriation suits is procedural in nature. As such, this part of Act 314 does not create vested rights for claimants whose appropriation suits are pending as of July 10, 1978. This position is buttressed by State v. Standard Oil Company of Louisiana, 188 La. 978, 178 So. 601 (1937), wherein it was stated that there is no vested right to a particular remedy, and that a statute is not unconstitutional merely because it changes, abolishes, or impairs an existing remedy for a cause of action which has accrued prior to the passage of the statute. We therefore hold that the retroactivity portion of Act 314 did not create any vested right to fair market value as a remedy in pending appropriation suits. For this reason, there is no constitutional obstacle to the retroactive application of Act 676 of 1979.
Act 676 of 1979 deleted that part of La.R.S. 38:281 which provided for retroactive application of the substantive provisions of Act 314 of 1978 to appropriation suits pending as of July 10, 1978. According to Dripps v. Dripps, 366 So.2d 544 (La. 1978), if the law on which a judicial proceeding is founded is repealed, or superceded and in effect repealed, by a statute enacted while the proceeding is pending in court, then the proceeding is thereby abated. Act 676 of 1979 superceded and in effect repealed that portion of Act 314 of 1978 which related to pending appropriation suits. Act 676 of 1979 was approved by the Governor on July 18, 1979, and its effective date was September 7, 1979.[9] Plaintiffs' suit was still pending as of the effective date of Act 676. Therefore, we hold that plaintiffs' claim for fair market value under Act 314 of 1978 was effectively abated by the passage and promulgation of Act 676 of 1979 during the pendency of the suit, and that the trial court was correct in so holding.
Therefore, for the above and foregoing reasons, the judgment of the trial court in favor of the defendant South Louisiana Tidal Water Control Levee District[10] is hereby affirmed. Costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
SHORTESS, Judge, dissenting.
I respectfully dissent.
The majority says that Act 314 of 1978 established substantive rights, but then holds that the retroactive effect of Act 314 on pending suits in expropriation or appropriation cases is not a substantive right, but *817 rather is a procedural device concerned with application of the act itself rather than the substantive rights granted therein. Act 314 by its express language gave plaintiffs the right to seek full market value for their land, because their suit was pending on July 10, 1978. This right was substantive in nature and not remedial or procedural. Act 676 of 1979 could not take away that substantive right.
Plaintiffs' suit was filed April 25, 1977, long after the effective date of the 1974 Constitution. Art. XIV, § 26, of the 1974 Constitution has not been violated.
Plaintiffs' damages should be measured in accordance with the provisions of Act 314 of 1978, rather than the provisions of the Louisiana Constitution of 1974, Art. XIV, § 32 and the Louisiana Constitution of 1921, Art. XVI, § 6.
NOTES
[1] By Act 225 of 1978, the Legislature changed the name of the defendant to "South Lafourche Levee District." This name change occurred while the instant suit was pending.
[2] Uylesses J. Terrebonne died in 1962. Plaintiff Georgina Duet Terrebonne is his surviving spouse and owns an undivided one-half interest in the two tracts. Plaintiffs Ellis A. Terrebonne and Edith T. Rodrigue are the children and each owns an undivided one-fourth interest in the two tracts.
[3] Within the ring levee, lateral levees will also be constructed to limit any possible flooding to one isolated area.
[4] Construction of a levee on the batture of Bayou Lafourche in this area is not possible because of the proximity of the bayou to all the roads, houses, and businesses in the area.
[5] The plaintiffs also prayed for judgment granting them full market value for the two tracts. The trial court ruled that under La.C.C.P. art. 1871 and the applicable jurisprudence, the suit for declaratory judgment could not be combined with a claim for fair market value. Plaintiffs have not assigned as error this ruling, nor has the issue been briefed or argued.
[6] Act 314 of 1978 reads:

"AN ACT
"To amend and reenact Section 281 of Title 38 of the Louisiana Revised Statutes of 1950, relative to levees and levee drainage, to provide for measure of compensation for land and improvements, Orleans Parish excepted, actually used, damaged or destroyed for levees or levee drainage purposes, and otherwise to provide with respect thereto.
"Be it enacted by the Legislature of Louisiana:
"Section 1. Section 281 of Title 38 of the Louisiana Revised Statutes of 1950 is hereby amended and reenacted to read as follows:
"§ 281. Construction and maintenance of levees and levee drainage; measure of compensation; recreational functions; filling of vacancies
"A. The levee boards of this state, Orleans Parish excepted, may construct and maintain levees, levee drainage, and do all other things incidental thereto. The levee boards may do all drainage work incidental to or made necessary by the construction of the levee system in this or adjoining states.
"B. All lands and improvements, Orleans Parish excepted, hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for fair market value to the full extent of the loss, and just compensation for both the land and improvements taken or destroyed and for damages suffered by reason thereof, shall be paid to the owner or into the court for his benefit.
"The measure of compensation for lands and improvements taken or destroyed for levee and levee drainage purposes shall be the fair market value of the property taken or destroyed before the proposed taking of the property or construction of the levee or the levee drainage facilities, without considering any change in value caused by the construction of the levee or the levee drainage facilities. The measure of damages, if any, to the remaining property of the owner by reason of the taking or destruction of a portion of his property is determined on a basis of immediately before and immediately after the taking, destruction, or the construction of the levee or the levee drainage facilities, taking into consideration the effects of the completion of the project in the manner proposed or planned.
"The owner shall be compensated as provided in this Act only when and to the extent that the Legislature, the levee board or the Federal government appropriates the funds therefor.
"The compensation defined herein shall apply to all lands and improvements taken, damaged or destroyed for levee and levee drainage purposes after the effective date of this Act, and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes.
"Compensation for property taken for other than levee and drainage purposes shall be as provided by the constitution and laws of the state for property expropriated or appropriated for a public purpose, provided that the owner shall be compensated to the full extent of his loss.
"C. The levee boards of this state, within their respective territorial jurisdictions, may perform recreational functions and use therefor any funds made available to them for such purpose. Within the authority granted in this Subsection and incident thereto, the boards may develop, operate and maintain recreational areas and for such purposes may acquire land by purchase, donation or lease and may construct, operate and repair buildings, ramps, marinas and other facilities and equipment common to a recreational area. The authority of the boards to operate such recreational areas includes the authority to lease facilities therein to others for operation on such terms and conditions, consistent with the public interest therein and use thereof, as the boards may determine. The boards, in the exercise of the authority conferred by this Subsection, may enter into agreements with any other political subdivision or any state or federal agency and may accept funds and grants from such subdivisions and agencies. Other political subdivisions of the state and state agencies shall cooperate with the boards with respect to the exercise of the boards' authority under this Subsection. The authority granted in this Subsection does not include, and shall not be construed to include, development of subdivisions or the building and selling of houses.
"D. Notwithstanding any law to the contrary, every vacancy now, or hereafter created, whether by reason of death, resignation, expiration of term, or any other cause, occurring in any levee district shall be filled by the governor from panels of names submitted as follows: each member of the house of representatives representing a parish or part of a parish lying within a levee district shall submit one name for each vacancy to be filled from the parish which he represents in the legislature, within said levee district and each member of the Senate shall submit one name for each vacancy to be filled from the parish or parishes which he represents in the legislature, within said levee district. In making appointments the governor shall not appoint any person to the board of commissioners to represent a specific parish who was not recommended by one or more of the legislators who represent that specific parish in the legislature.
"All members of the boards of commissioners of levee districts shall serve at the pleasure of the governor.
"The provisions of this Subsection apply to all boards of commissioners of all levee boards.
"Section 2. This Act shall become effective upon the signature of the governor, or if not signed by the governor, upon the expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Louisiana Constitution of 1974.
"Section 3. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable.
"Section 4. All laws or parts of laws in conflict herewith are hereby repealed."
[7] Act 676 of 1979 reads:

"AN ACT
"To amend and reenact Subsections A and B of Section 281 of Title 38 of the Louisiana Revised Statutes of 1950 relative to levees and levee drainage; to provide for the construction and maintenance of levees; to provide for the measure of compensation for land and improvements actually used or destroyed for levees or levee drainage purposes; to provide for the areas in which the Act shall apply, to provide for land or property to which the Act shall not apply; and otherwise to provide with respect thereto.
"WHEREAS, the Legislature of Louisiana enacted Act 314 of 1978 which contained provisions which were vague and indefinite particularly with respect to its retroactive application and with respect to lands used or destroyed for levees and levee drainage purposes for which fair market value must be paid; and
"WHEREAS, these provisions should be clarified in order to set forth clearly the intention of the Legislature of Louisiana in enacting said statute; therefore:
"Be it enacted by the Legislature of Louisiana:
"Section 1. Subsections A and B of Section 281 of Title 38 of the Louisiana Revised Statutes of 1950 are hereby amended and reenacted to read as follows:
"§ 281. Construction and maintenance of levees and levee drainage; measure of compensation; recreational functions; filling vacancies
"A. The levee boards of this state may construct and maintain levees, levee drainage, and do all other things incidental thereto. The levee boards may do all drainage work incidental to or made necessary by the construction of the levee system in this or adjoining states.
"B. All lands and improvements hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for at fair market value to the full extent of the loss.
"The measure of compensation for lands and improvements taken or destroyed for levees and levee drainage purposes shall be the fair market value of the property taken or destroyed before the proposed use of the property or construction of the levee or the levee drainage facilities, without considering any change in value caused by the construction of the levee or the levee drainage facilities. The measure of damages, if any, to the remaining property of the owner by reason of the use or destruction of a portion of the property is determined on a basis of immediately before and immediately after the use or destruction of the property for levee drainage construction taking into consideration the effects of the completion of the project in the manner proposed or planned.
"The owner shall be compensated as provided in this Subsection only when and if, in its discretion the Louisiana Legislature, the levee board or the federal government appropriates the funds therefor.
"The compensation defined herein shall apply to all lands and improvements appropriated, used or damaged for levees and levee drainage purposes after the effective date of this Act, and to lands appropriated, used or damaged for levees and levee drainage purposes after July 10, 1978.
"However, nothing contained in this Subsection shall apply to batture or to property, the control of which is vested in the state or any political subdivision for the purpose of commerce.
"`Batture' as used in this Section shall have the same meaning as that term was defined by the courts of this state as of the effective date of the Louisiana Constitution of 1974.
"Section 2. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Act which can be given effect without the invalid provisions, items, or applications, and to this end the provisions of this Act are hereby declared severable.
"Section 3. All laws or parts of laws in conflict herewith are hereby repealed."
[8] A proper method of proving the riparian character of lands that are not immediately adjacent to a navigable river or stream is to trace the title to the original grant at the time the property was separated from the public domain. Dickson v. Board of Commissioners of Caddo Levee District, 210 La. 121, 26 So.2d 474, 476 (1946). This method of proof was followed by the Levee District vis-a-vis the tracts belonging to plaintiffs.
[9] Pursuant to Article III, Section 19 of 1974 Constitution, which states that all laws shall take effect sixty days after the adjournment of the legislature unless specifically provided for otherwise. The 1979 Regular Session adjourned July 9, 1979.
[10] See footnote 1.