445 So.2d 1221 (1984)
Ellis TERREBONNE, et al.
v.
SOUTH LAFOURCHE TIDAL CONTROL LEVEE DISTRICT.
No. 82-C-1721.
Supreme Court of Louisiana.
January 16, 1984.
Rehearing Denied February 9, 1984.
Stanley L. Perry, Galliano, for applicant.
H. Harwell Herrin, Golden Meadow, Jerald P. Block, Block, Block & Parro, Thidodaux, John J. Erny, Jr., Asst. Dist. Atty., Norval J. Rhodes, Dist. Atty., for respondents.
William J. Guste, Atty. Gen., Michael O. Hesse, Asst. Atty. Gen., Mack E. Barham, Ralph S. Hubbard, III, Barham & Churchill, New Orleans, E.H. Lancaster, Jr., Lancaster, Baxter & Seale, Tallulah, Frank Voelker, Jr., Voelker, Ragland, Brackin & Crigler, Lake Providence, William C. Gambel, J. Clifford Rogillio, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, amicus curiae.
LEMMON, Justice.
This litigation involves the issue of the measure of damages, if any, to which an owner of riparian property is entitled when the property is appropriated for levee purposes.
Prior to 1978, a property owner was not statutorily or constitutionally entitled to compensation for riparian property appropriated for levee purposes, because such property has been deemed subject to a levee servitude in favor of the public since the time the riparian property was severed from the public domain.[1] The Louisiana Constitution of 1921 only fixed the maximum compensation that could be paid for the taking of such property, which was the assessed value of the property for the preceding year. See La. Const. Art. XVI, § 6 (1921). La. Const. Art. VI, § 42 (1975), which became effective on January 1, 1975, mandated compensation "as provided by *1222 law" for property used for levee purposes. The previous limitation on compensation (the assessed value for the preceding year) was continued in effect as a statute by La. Const. Art. XIV, § 16 (1975), subject to change by law.
In 1978, the Legislature enacted Act 314, which amended La.R.S. 38:281 to provide for payment of just compensation for property taken for levee purposes.[2] The Act further provided that the measure of compensation shall be the fair market value of the property and that the defined compensation shall apply to expropriation or appropriation suits pending on July 10, 1978, the effective date of the Act.
In the following year, the Legislature again amended La.R.S. 38:281. Act 676 of 1979, which provided for compensation in substantially the same language, further provided that the defined compensation shall apply to lands and improvements appropriated for levee purposes after the effective date of the 1979 Act and to lands appropriated for levee purposes after July 10, 1978.[3] However, Act 676 was silent as *1223 to compensation in suits pending on July 10, 1978.
The issue in the present litigation, which involves a 1975 appropriation for levee purposes, is whether Act 676 of 1979 validly retracted the benefit of the fair market value measure of compensation which was afforded by Act 314 of 1978 to owners of riparian property whose suits were pending on July 10, 1978.
By resolution dated November 4, 1975, South Lafourche Tidal Control Levee District (District) appropriated two tracts of plaintiffs' land for the purpose of constructing a hurricane protection levee. The District tendered compensation in the amount of $24.87, the previous year's assessed value of the property.
Plaintiffs refused the tender and sought a declaratory judgment declaring the appropriation invalid. Plaintiffs later (after July 10, 1978) amended their petition to assert alternatively that they were entitled to the fair market value of the property pursuant to La.R.S. 38:281, as amended by Act 314 of 1978.
The trial court upheld the appropriation. However, the court, concluding that Act 676 of 1979 applied so as to retract the portion of Act 314 of 1978 under which plaintiffs sought to recover fair market value, held that the proper measure of compensation was the assessed value.
The First Circuit Court of Appeal affirmed. Terrebonne v. South Louisiana Tidal Water Control Levee District, 414 So.2d 805 (La.App. 1st Cir.1982). Shortly thereafter, the Second Circuit, in a similar case entitled Pillow v. Board of Commissioners, 425 So.2d 1267 (La.App. 2d Cir. 1982), held that Act 676 did not apply in this manner and permitted recovery of fair market value under such circumstances. See also Marston v. Red River Levee and Drainage Dist., 632 F.2d 466 (5th Cir. 1980), which reached the same result. We granted certiorari primarily to resolve this conflict between the circuits.[4] 427 So.2d 1199 (La.1983).
Plaintiffs contend that Act 314 of 1978 granted substantive rights to them and others with suits pending on July 10, 1978 and that Act 676 of 1979 could not impair their vested rights.[5] The intermediate court in a split decision distinguished between Act 314's general grant of the substantive right to fair market value in appropriations after July 10, 1978 and the Act's "retroactivity provision" granting this admittedly substantive right in suits pending on July 10, 1978".[6] The court held that Act 314's *1224 "retroactivity provision" was "procedural in nature".[7] Noting that Act 314 was vague, the court also construed Act 676 of 1979 to be "interpretative legislation" which "merely establishes the meaning which Act 314 of 1978 has from the time of its enactment".[8] 414 So.2d at 816. Noting further that there is no vested right to a particular remedy (which means the procedure used in effectuating substantive rights), the court held that "the retroactivity portion of Act 314 did not create any vested right to fair market value as a remedy in pending appropriation suits". 414 So.2d at 816. (Emphasis supplied)
We disagree with the reasoning of the intermediate court. Act 314 of 1978 authorized the award of fair market value as the measure of compensation in appropriation suits pending on July 10, 1978. The Act did not merely prescribe a method for enforcing a substantive right; it created and defined a new substantive right in favor of plaintiffs and persons similarly situated. That substantive law was nevertheless substantive because it applied in part to facts which occurred prior to its enactment.
The right to compensation measured at fair market value became a vested right on the effective date of the Act.[9] If plaintiffs' case had been tried on July 11, 1978, plaintiffs would have been entitled to compensation measured by the standard adopted in Act 314. This vested right could not be impaired by subsequent legislation. The Legislature simply cannot take away an existing cause of action based upon substantive rights which had clearly been granted by legislation during the preceding session and had become vested on the effective date of the legislation.
Moreover, Act 676 was not interpretive legislation, at least not as to the issue involved in this litigation. Act 314, at "the time of its enactment", was not "vague and indefinite" as to its applicability to suits pending on July 10, 1978. Arguably, Act 314 was unclear as to riparian owners whose property had been appropriated before July 10, 1978, but who had not filed suit as of that date. Nevertheless, whatever vagueness in Act 314 the Legislature may have intended to clarify by Act 676, the later act (which by its terms does not apply to property taken before July 10, 1978) did nothing to clarify or explain the *1225 earlier grant (of the substantive right to receive compensation at fair market value) to those riparian owners whose appropriation suits were pending on July 10, 1978.
Additionally, even interpretive legislation cannot operate to disturb already vested rights. The Legislature cannot retroactively affect, under the guise of interpretive legislation, substantive rights vested under earlier unambiguous legislation. See Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576 (La.1974).
We therefore hold that Act 314 of 1978 vested in plaintiffs, whose suit was pending on July 10, 1978, the substantive right to compensation measured at the fair market value of their property appropriated by a 1975 resolution of the District. Once vested, plaintiffs' right to such compensation could not constitutionally be divested by Act 676 of 1979. La. Const. Art. I, § 23 (1974); U.S. Const. Art. I, § 10; Lott v. Haley, 370 So.2d 521 (La.1979).
Accordingly, the judgments of the lower courts are reversed, and the case is remanded to the district court for rendition of a declaratory judgment in accordance with this opinion.
NOTES
[1] Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (1896).
[2] The portion of Act 314 pertinent to this litigation is that which amended and enacted La.R.S. 38:281 B to provide as follows:

"B. All lands and improvements, Orleans Parish excepted, hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for fair market value to the full extent of the loss, and just compensation for both the land and improvements taken or destroyed and for damages suffered by reason thereof, shall be paid to the owner or into the court for his benefit.
"The measure of compensation for lands and improvements taken or destroyed for levee and levee drainage purposes shall be the fair market value of the property taken or destroyed before the proposed taking of the property or construction of the levee or the levee drainage facilities, without considering any change in value caused by the construction of the levee or the levee drainage facilities. The measure of damages, if any, to the remaining property of the owner by reason of the taking or destruction of a portion of his property is determined on a basis of immediately before and immediately after the taking, destruction, or the construction of the levee or the levee drainage facilities, taking into consideration the effects of the completion of the project in the manner proposed or planned.
"The owner shall be compensated as provided in this Act only when and to the extent that the Legislature, the levee board or the Federal government appropriates the funds therefor.
"The compensation defined herein shall apply to all lands and improvements taken, damaged or destroyed for levee and levee drainage purposes after the effective date of this Act, and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes.
"Compensation for property taken for other than levee and drainage purposes shall be as provided by the constitution and laws of the state for property expropriated or appropriated for a public purpose, provided that the owner shall be compensated to the full extent of his loss." (Emphasis supplied.)
[3] The portion of Act 676 pertinent to this litigation is that which amended and enacted La.R.S. 281 B to provide as follows:

* * * * * *
"B. All lands and improvements hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for at fair market value to the full extent of the loss.
"The measure of compensation for lands and improvements taken or destroyed for levees and levee drainage purposes shall be the fair market value of the property taken or destroyed before the proposed use of the property or construction of the levee or the levee drainage facilities, without considering any change in value caused by the construction of the levee or the levee drainage facilities. The measure of damages, if any, to the remaining property of the owner by reason of the use or destruction of a portion of the property is determined on a basis of immediately before and immediately after the use or destruction of the property for levee drainage construction taking into consideration the effects of the completion of the project in the manner proposed or planned.
"The owner shall be compensated as provided in this Subsection only when and if, in its discretion the Louisiana Legislature, the levee board or the federal government appropriates the funds therefor.
"The compensation defined herein shall apply to all lands and improvements appropriated, used or damaged for levees and levee drainage purposes after the effective date of this Act, and to lands appropriated, used or damaged for levees and levee drainage purposes after July 10, 1978.
"However, nothing contained in this Subsection shall apply to batture or to property, the control of which is vested in the state or any political subdivision for the purpose of commerce.
"`Batture' as used in this Section shall have the same meaning as that term was defined by the courts of this state as of the effective date of the Louisiana Constitution of 1974." (Emphasis supplied)
[4] We also granted certiorari in Pillow v. Board of Commissioners, 427 So.2d 1200 (La.1983).
[5] Plaintiffs' application for certiorari in the present case raised two other issues by separate assignments of error. The first assignment involved the intermediate court's conclusion that the property was riparian in nature and that appropriation of the property was necessary to prevent flooding from the stream to which the property was riparian. The second assignment involved the court's rejection of plaintiffs' contention that they were denied equal protection of the law, because the District had paid fair market value to other similarly situated landowners.

We decline to review the portion of the intermediate court's decision involving these two issues and confine our review to plaintiffs' third assignment of error regarding the effect of the 1978 and 1979 acts.
[6] The court of appeal correctly recognized that Act 314 was a legislative attempt to effectuate La. Const. Art. VI, § 42 (1975) by providing fair market value to owners of riparian property. That section provides:

"(A) Compensation. Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. However, nothing contained in this Paragraph with respect to compensation for lands and improvements shall apply to batture or to property the control of which is vested in the state or any political subdivision for the purpose of commerce. If the district has no other funds or resources from which the payment can be made, it shall levy on all taxable property within the district a tax sufficient to pay for property used or destroyed to be used solely in the district where collected.
("B) Appropriation. Nothing in this Section shall prevent the appropriation of such property before payment."
[7] According to the court, construction of the retroactivity provision so as to grant a substantive right might violate La. Const. Art. XIV, § 26 (1975) by "purporting to create substantive rights based on events occurring prior to the Constitution's effective date". 414 So.2d at 815. Since the taking of plaintiffs' land occurred well after the effective date of the 1974 Constitution, there does not appear to be any constitutional problem in this respect.
[8] The intermediate court construed the two acts in this manner because of the following language in the title of the 1979 Act:

"WHEREAS, the Legislature of Louisiana enacted Act 314 of 1978 which contained provisions which were vague and indefinite particularly with respect to its retroactive application and with respect to lands used or destroyed for levees and levee drainage purposes for which fair market value must be paid; and
"WHEREAS, these provisions should be clarified in order to set forth clearly the intention of the Legislature of Louisiana in enacting said statute;"
[9] A right is vested when "the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest". Tennant v. Russell, 39 So.2d 726 (La.1949).

In Clements v. State Dep't. of Health, Social & Rehabilitation Services, 391 So.2d 66 (La.App. 4th Cir.1980), cert. denied, 396 So.2d 932 (La. 1981), the court refused to apply retroactively a three-year peremptive period so as to bar plaintiff's joinder of a solidary obligor in a tort suit after the three-year period had run. The court said:
"At the time the suit was filed against the original defendant plaintiffs acquired a vested right, i.e., an absolute, complete and unconditional right, independent of any contingency, to make appellees party defendants as solidary obligors without being barred from doing so by prescription or peremption." 391 So.2d at 68.
Likewise in the instant case, when Act 314 of 1978 made fair market value the compensation due for appropriations and expressly made that measure of compensation applicable to the suit involving land appropriated from plaintiffs, they acquired an absolute, complete and unconditional right, independent of any contingency, to fair market value compensation for their land.