425 So.2d 1267 (1982)
Dudley B. PILLOW, Jr., et al., Plaintiffs-Appellees,
v.
BOARD OF COMMISSIONERS FOR the FIFTH LOUISIANA LEVEE DISTRICT, Defendants-Appellants.
No. 15041-CA.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
Rehearing Denied December 9, 1982.
Writ Granted January 28, 1983.
*1269 Mack E. Barham, New Orleans, Henry C. Sevier, Jr., Tallulah, Frank Voelker, Jr., Lake Providence, E.H. Lancaster, Jr., Tallulah, for Plaintiffs-Appellees.
William J. Guste, Jr., Gary Keyser, Michael O. Hesse, Baton Rouge, C. Calvin Adams, Jr., Tallulah, for defendants-appellants.
Before HALL, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
In this inverse appropriation proceeding, defendant, Board of Commissioners for the Fifth Louisiana Levee District (hereinafter referred to as "Levee Board"), appeals a judgment of the district court awarding plaintiffs, Dudley B. Pillow, Jr., Watson Pillow, and Lois Pillow Robertson (hereinafter referred to as the "Pillows"), $409,189.70 as the fair market value of property taken for a levee servitude and severance damages to portions of the remaining property plus attorneys' fees of 1/3 of the principal and interest under the judgment plus 12% interest on the attorneys' fees until paid. We amend and affirm.

FACTS
This lengthy, involved litigation was initially brought when thirty five plaintiffs, who are owners of land and other real rights in the Fifth Louisiana Levee District composed of the parishes of East Carroll, Madison, Tensas, and Concordia, filed a class action against the Levee Board in the district court for Madison Parish on July 7, 1978, seeking injunctive, declaratory and alternative relief.
This matter arose when the Levee Board acting in concert with the U.S. Corps of Engineers and the Louisiana State Department of Public Works in July, 1973, began appropriating lands for the construction, reconstruction, raising, enlargement, repair, *1270 relocation, realignment, widening and improvement of the levee along the right descending bank of the Mississippi River from the Arkansas state line on the north to the southernmost limits of the Levee Board's jurisdiction. The taking of property in Madison Parish was in connection with the Young's Point or Reid Bedford Levee Enlargement and Berm Project. At the time of the filing of the original suit, certain contracts had been completed covering certain areas of the project, other contracts were underway and still other contracts were being advertised for bids.
The importance of an adequate Flood Control Plan for the lower Mississippi valley goes without mention. Levees are a key element of the flood control plan, working in combination with floodways, channel improvement and stabilization, and tributary basin improvements. Memories of the 1927 Flood and the 1973 Flood are sufficient to emphasize the importance of projects such as the Young's Point project as it relates to the broad plan of the Mississippi River Commission to prevent destructive floods in the Lower Valley under the authority of the Flood Control Act of 1928.
In connection with this project, the Levee Board passed resolutions of "appropriation" and/or informed the plaintiffs in the original class action that their lands would be taken and that they would receive no more than the assessed value for those portions appropriated lying landward of the levee, no compensation for lands lying riverward of the levee and no severance damages. Plaintiffs then brought this class action, for injunctive and declaratory relief and asserting an action of inverse expropriation actively seeking and suing for redress as to all property taken or damaged by the Levee Board without proper exercise of expropriation.
Thereafter, several exceptions were filed by the Levee Board. On October 4, 1978, pursuant to a motion made by the plaintiffs in the original petition, the district court rendered an ex parte order certifying the suit as a class action and ordering that notice be given to all class members by mail and by publication. By separate order of the same date, the Levee Board was ordered to show cause why the ex parte order should not be affirmed and confirmed. Defendant filed additional exceptions, and on October 17, 1978, a hearing was held on all pending motions and exceptions. Judgment was rendered overruling the majority of the Levee Board's exceptions and ordering that the certification of the action as a class action be maintained. The Levee Board filed two applications for writs, one directed primarily toward the propriety of the granting of the class action and one toward the propriety of the suit as an action for declaratory judgment. We granted writs primarily to review the class action issue and determined that the class action was not allowable in this case for numerous reasons, concluding that the values of effectuating substantive law, judicial efficiency and individual fairness would not be served by allowing this action to proceed as a class action. Pillow v. Board of Commissioners for the Fifth Louisiana Levee District, 369 So.2d 1172 (La.App. 2d Cir.1979) writ denied 373 So.2d 525 (La.1979). We ruled only on that issue and specifically noted that no other issue other than the allowance of the class action was considered or ruled upon in our opinion. The case was remanded for further consistent proceedings.
On June 9, 1980, the plaintiffs in the original Class Action filed an Amended Petition transforming the class action seeking declaratory relief to an ordinary proceeding seeking just compensation and damages, including the fair market value of property taken, appropriated, used or destroyed for levee or levee drainage purposes and for all damages to the full extent of the losses occasioned by the taking, appropriation, use or destruction of plaintiffs' property, including interest, attorneys' fees, experts' fees and all costs.
Plaintiffs then proceeded to particularize the claims of each of the plaintiffs or groups of plaintiffs. For reasons that will be explained more fully later in this opinion, we concern ourselves only with the particular claims of the Pillows.
*1271 The Pillows alleged that they were the owners of a certain tract of land in Madison Parish and that their property was "appropriated" by the Levee Board on April 13, 1978; May 24, 1978; and June 21, 1978. They further alleged that pursuant to the "appropriations" the following land was actually taken:
1) 70 acres cultivatable land on North End-Riverside of levee;
2) 7 acres wood and waste land North End-Riverside of levee;
3) 6.68 acres cultivatable land on landside of levee on North End;
4) 30 acres wood and waste on South End-Riverside of levee; and
5) 9.474 acres on South side of Placelandside of levee.
Finally, they asserted a claim for damages, attorneys' fees, experts' fees and costs as well as injunctive and other relief.
On September 8, 1980, the Levee Board filed its peremptory exceptions of no cause and/or no right of action which were amended and supplemented on October 27, 1980. The original exceptions of no cause of action claimed that the petition failed to state a cause of action under the exsisting law because it failed to allege the property was assessed for taxes in the preceding year and the amount of the assessment.[1]
After a hearing on these exceptions on November 9, 1980, the trial court referred certain of the exceptions to the merits. The Levee Board immediately thereafter filed writs through this court to the Louisiana Supreme Court. On January 16, 1981, the Supreme Court ordered the trial court to rule on the exceptions of no cause of action prior to trial. On January 29, 1981, the trial court overruled the exceptions. Writs taken in response to this ruling were denied by this court and the Supreme Court.
On March 20, 1981, plaintiffs filed a Motion to Sever the Pillow claim from the other pending claims and to continue indefinitely the remainder. An order was signed on the same date severing the Pillow claim and fixing it for trial on April 27, 1981.
On March 23, 1981, the Levee Board filed a Motion for Continuance based on the resignation of one of its counsel from the Attorney General's office. That particular attorney was allowed by ex parte motion to withdraw from this cause on March 23, 1981. After a hearing, this motion was denied.
On March 26, 1981, new counsel for the Levee Board enrolled who on March 27, 1981, filed a Motion for Continuance which was fixed for hearing on March 30, 1981. After the hearing, the trial court again denied the motion which ruling was brought before this court on the Levee Board's application for writs and denied. The Supreme Court again denied writs.
Thereafter, trial commenced on April 27, 1981, and continued until May 1, 1981. On March 8, 1982, the trial court in lengthy written reasons for judgment found that Act 314 of 1978 had granted substantive rights to the Pillows for fair market value for their land, found that none of the land taken was batture, found that the land on the Southernmost portion of the Pillows' property was not riparian, found that an "inverse appropriation or expropriation suit" was proper in this case, determined the acreage of the actual taking, and assigned values to the corresponding parcels taken along with severance damages, attorneys' fees, experts' fees, interest and costs.
Judgment in accordance with these reasons was signed and filed on March 17, 1982. A motion for new trial was denied resulting in this appeal in which the Levee Board assigns the following errors for our consideration:
1) The trial court erroneously overruled the amended and supplemental peremptory exception of No Cause of Action dated October 22, 1980 which alleged that the plaintiff/appellee had failed to state a cause of action under the existing law as *1272 of the institution of suit by failing to allege that the property was assessed for taxes in the preceeding year and the amount of such assessment;
2) The trial court abused its discretion by refusing to grant defendant/appellant a continuance of the trial date on March 30, 1981, despite the withdrawal from the case by appellants' two previous counsel only four weeks prior to the trial date;
3) The trial court was incorrect in holding that Act 314 of 1978 was not superseded by Act 676 of 1979, which amended the provisions of La.R.S. 38:281 et seq. by deleting language therein which would have applied the amended provisions of La.R.S. 38:281 to suits pending as of July 10, 1978;
4) The trial court improperly calculated the amount of property actually taken by the defendant/appellant as well as the value thereof;
5) The trial court awarded an amount of attorneys' fees based upon a percentage of the amount of the judgment awarded instead of basing the award of attorney's fees on an amount calculated to compensate for reasonable attorneys' fees actually incurred by the appellees.

ASSIGNMENT OF ERROR NO. 1
The Levee Board first contends that the trial court erroneously overruled its amended and supplementary peremptory exception of no cause of action which alleged that plaintiffs had failed to state a cause of action under the existing law as of the institution of this suit by failing to allege that the property was assessed for taxes in the preceding year and the amount of such assessment.
Immediately following the trial court's adverse ruling, the Levee Board applied to this court for writs. After due consideration we denied the writs stating:
The application does not justify the exercise of our supervisory jurisdiction for the reason that the petition alleges a cause of action.
The Supreme Court unanimously denied writs.
As of July 6, 1978, the date of the filing of the original petition in this proceeding, under the law existing at that time,[2] a petition in an inverse appropriation suit such as the one filed in the instant proceeding in order to state a cause of action had to allege that the property taken was assessed in the amount of its assessed value for the preceding year. However, on July 10, 1978, Act 314 of 1978, infra, came into effect. Thereafter, on June 9, 1980, plaintiffs amended their suit to allege their entitlement to market value compensation under the applicable act. For reasons discussed more fully in connection with Assignment of Error No. 4, the change in the law by the 1978 Act coupled with plaintiffs' amended petition cured the earlier failure to state a cause of action. Therefore, the trial court's ruling in this respect was not erroneous.

ASSIGNMENT OF ERROR NO. 2
The Levee Board next contends that the trial court abused its discretion by refusing to grant a continuance of the trial date despite the withdrawal of one of its attorneys of record only four weeks prior to trial.
This identical argument has also formerly been considered by this court in our denial of the Levee Board's writ application wherein we stated:
Application does not justify the exercise of our supervisory jurisdiction. The trial judge did not abuse her discretion in denying the continuance.
The Supreme Court thereafter unanimously denied writs.
La.C.C.P. Art. 1601 vests a trial court with great discretion in determining whether or not to grant a continuance in a matter pending on its docket. It is noteworthy that the instant case had been pending for nearly three years prior to the trial date, and that only one of the Levee Board's attorneys of record had withdrawn. The *1273 Levee Board had almost five weeks to secure additional counsel in preparation for trial, and in fact, did secure additional counsel four weeks prior to trial. The trial court did not abuse its discretion in its denial of the continuance.

ASSIGNMENT OF ERROR NO. 3
In this assignment of error, the Levee Board contends that the trial court was in error in holding that Act 314 of 1978 was not superseded or abated by Act 676 of 1979, the latter act amending La.R.S. 38:281 et seq. by deleting language which would have applied the amended provisions of La. R.S. 38:281 to suits pending as of July 10, 1978.
In order to properly address and analyze this assignment of error, it is necessary to briefly trace the law relating to appropriations for levee purposes as it has existed during the pendency of this suit. In our former ruling on the applicability of the class action to this proceeding, we stated:
Riparian property (property adjacent to a navigable stream) is subject to the levee servitude (an ancient servitude codified in Civil Code Article 665) and may be appropriated (as distinguished from expropriated) for levee purposes, if the property was riparian when severed from the public domain and if the property is within the range of the reasonable necessities of the situation as produced by the forces of nature unaided by artificial causes. Use of property subject to the levee servitude for levee purposes is not a taking of private property for which compensation is due under either the Louisiana or Federal Constitutions, any compensation provided for by Louisiana constitutional or statutory law being a mere gratuity. The rationale of decisions upholding the constitutionality of appropriation for levee purposes is that the levee servitude was reserved to the public at the time riparian property was severed from the public domain and that title to such riparian property is held subject to the servitude. Eldridge v. Trezevant, 160 U.S. 452,16 S.Ct. 345,40 L.Ed. 490 (1896); Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749 (1956); Dickson v. Board of Com'rs of Caddo Levee Dist., 210 La. 121, 26 So.2d 474 (1946); Deltic Farm and Timber Co., Inc. v. Board of Commissioners for the Fifth Louisiana Levee District, 368 So.2d 1109 (La.App. 2d Cir.1979); and numerous other cases cited in the foregoing decisions.
Article 16, § 6 of the Louisiana Constitution of 1921 provided for payment for lands used or destroyed for levee purposes at a price not to exceed the assessed value. Article 6, § 42 of the Louisiana Constitution of 1974, which went into effect at midnight on December 31, 1974, provides that lands and improvements actually used or destroyed for levee drainage purposes shall be paid for as provided by law. Article 14, § 32 of the 1974 Constitution provides that the provisions of Article 16, § 6 of the 1921 Constitution shall be continued as a statute, subject to change by the Legislature, and the amount of compensation therein required to be paid for property used or destroyed for levee or levee drainage purposes shall be paid as provided in that Section until the Legislature enacts a law to effectuate Article 6, § 42 of the 1974 Constitution.
Act 314 of 1978, effective July 10, 1978, provides that all lands and improvements hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for at fair market value to the full extent of the loss and just compensation for both the land and improvements taken or destroyed and for damages suffered by reason thereof shall be paid to the owner. The Act further provides that the owner shall be compensated as provided in the Act only when and to the extent that the Legislature, the Levee Board or the federal government appropriates the funds therefor. The Act provides that the compensation defined therein shall apply to all lands and improvements taken, damaged or destroyed *1274 after the effective date of the Act and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes.
Act 113 of 1975, enacting Louisiana R.S. 38:301 through 301.45, effective September 12, 1975, provides a procedure for expropriating property needed for levee purposes whenever any levee district cannot appropriate or amicably acquire such property. The statute requires the filing of a suit and the deposit into court of the estimated full extent of the owner's loss for the expropriation or the damage caused by the taking.
Act 314 of 1978 provides in pertinent part:
A. The levee boards of this state, Orleans Parish excepted, may construct and maintain levees, levee drainage, and do all other things incidental thereto. The levee boards may do all drainage work incidental to or made necessary by the construction of the levee system in this or adjoining states.
B. All lands and improvements, Orleans Parish excepted, hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for fair market value to the full extent of the loss, and just compensation for both the land and improvements taken or destroyed and for damages suffered by reason thereof, shall be paid to the owner or into the court for his benefit.
The measure of compensation for lands and improvements taken or destroyed for levee and levee drainage purposes shall be the fair market value of the property taken or destroyed before the proposed taking of the property or construction of the levee or the levee drainage facilities without considering any change in value caused by the construction of the levee or the levee drainage facilities. The measure of damages, if any, to the remaining property of the owner by reason of the taking or destruction of a portion of his property is determined on a basis of immediately before and immediately after the taking, destruction, or the construction of the levee or the levee drainage facilities, taking to consideration the effects of the completion of the project in the manner proposed or planned.
The owner shall be compensated as provided in this Act only when and to the extent that the Legislature, the levee board or the Federal government appropriates the funds therefor.
The compensation defined herein shall apply to all lands and improvements taken, damaged or destroyed for levee and levee drainage pourposes after the effective date of this Act, and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes.
Act 676 of 1979 provides in pertinent part:
A. The levee boards of this state may construct and maintain levees, levee drainage, and do all other things incidental thereto. The levee boards may do all drainage work incidental to or made necessary by the construction of the levee system in this or adjoining states.
B. All lands and improvements hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for at fair market value to the full extent of the loss.
The measure of compensation for lands and improvements taken or destroyed for levees and levee drainage purposes shall be the fair market value of the property taken or destroyed before the proposed use of the property or construction of the levee or the levee drainage facilities, without considering any change in value caused by the construction of the levee or the levee drainage facilities. The measure of damages, if any, to the remaining *1275 property of the owner by reason of the use or destruction of a portion of the property is determined on a basis of immediately before and immediately after the use or destruction of the property for levee drainage construction taking into consideration the effects of the completion of the project in the manner proposed or planned.
The owner shall be compensated as provided in the Subsection only when and if, in its discretion the Louisiana Legislature, the levee board or the federal government appropriates the funds therefor.
The compensation defined herein shall apply to all lands and improvements appropriated, used or damaged for levees and levee drainage purposes after the effective date of this Act, and to lands appropriated, used or damaged for levees and levee drainage purposes after July 10, 1978.

However, nothing contained in this Subsection shall apply to batture or to property, the control of which is vested in the state or any political subdivision for the purpose of commerce.

"Batture" as used in this Section shall have the same meaning as that term was defined by the courts of this state as of the effective date of the Louisiana Constitution of 1974.
It appears from the Levee Board's brief and argument that it is willing to concede that the Pillows would have been entitled to receive fair market value compensation for the property taken as well as damages under the 1978 Act which expressly provided that it applied to suits pending as of July 10, 1978. [This suit being filed July 6, 1978 was pending on July 10, 1978.] It contends, however, that the 1979 Act which made fair market value compensation applicable to property "appropriated, used or damaged for levee and levee drainage purposes after July 10, 1978," omitting the language relative to suits pending was procedural or interpretive legislation, resulting in Pillow's claim for fair market value compensation and damages under the 1978 Act being abated. It further contends that the amending provisions of Act 314 of 1978 regarding the applicability of those provisions were procedural in nature and therefore subject to further amendment by Act 676 of 1979.
In support of its position, the Levee Board relies on the recent case of Terrebonne v. South Louisiana Tidal Water Control Levee District, 414 So.2d 805 (La.App. 1st Cir.1982).[3] In Terrebonne, plaintiffs filed a suit for declaratory judgment to declare invalid an appropriation of land owned by plaintiffs by the defendant Levee District by resolution of November 4, 1975. The appropriations were made for a right of way for a hurricane protection levee constructed for flood control of lands along the lower section of Bayou Lafourche in Lafourche Parish. Subsequent to the appropriation of the tracts in question, the Levee District tendered the previous year's assessment value of the property pursuant to Louisiana Constitution of 1974, Art. VI, § 42 and Louisiana Constitution of 1921, Art. XVI § 6 which tender was returned by plaintiffs who then filed this suit on April 25, 1977. Therefore, the suit was pending on July 10, 1978. Plaintiffs contended that Act 314 of 1978 expressly set out firm substantive rights in their favor and that to apply Act 676 of 1979 retrospectively so as to retract the substantive rights granted by the former act would be to impair vested right unconstitutionally.
The Terrebonne court in a split decision upheld the trial court and held that Act 314 of 1978 mandated the payment of fair market value in situations where lands and improvements were actually used or destroyed for levees in an attempt to effectuate *1276 Article VI § 42 of the 1974 Constitution. The majority conceded that in this respect it did establish substantive rights. However, the majority then went on to conclude that the retroactive effect of Act 314 of 1978 on pending suits in expropriation or appropriation cases is not a substantive right but rather a procedural device concerned with the application of the Act itself. The majority specifically held that because Act 314 of 1978 applied the substantive provisions of the Act to pending appropriation suits, the retroactivity provision was procedural in nature. The majority then went on to hold that Act 676 of 1979 which deleted the provision relating to pending appropriation suits was interpretive legislation which did not create new rules but merely established the meaning which Act 314 of 1978 had from the time of its enactment and accorded the "interpretive" legislation retrospective effect. They further concluded that the "procedural" portion of Act 314 did not create vested rights for claimants whose appropriation suits were pending as of July 10, 1978. They finally concluded that because of the deletion by Act 676 of the retroactive application of the "substantive" portions of Act 314 to pending suits, the proceeding filed by Terrebonne seeking fair market value under Act 314 was abated. However, we note with interest Judge Shortess' dissent to the effect that Act 314 by its express language gave plaintiffs the right to seek full market value for their land because their suit was pending on July 10, 1978, a right which he characterizes as substantive in nature rather than remedial of procedure. He concludes that Act 676 of 1979 could not take away that substantive right.
We respectfully disagree with the rationale underlying the majority holding in Terrebonne and decline to follow it because we conclude that it is based upon an erroneous application of the law and the jurisprudence of this state. To follow the decision in Terrebonne, would further emasculate the Act passed in 1978 which was designed and created specially for the class of landowners in this state who were subject to having their property taken for public purposes without compensation. We find that the Pillows were among that class of people whom the legislature sought to protect in its enactment of Act 314 of 1978.
We concede that Act 676 of 1979 did amend portions of Act 314 and further that it eliminated any reference to takings occurring prior to July 10, 1978. We conclude, however, that the elimination of that provision is of no moment to this decision because under Act 314 the substantive right to those parties so identified and classified had already vested. Therefore, Act 676 cannot be construed in any form or fashion to retroactively take away that vested right to be paid fair market value to those persons with suits pending as of July 10, 1978. Even if the act expressly provided that it was to be applied retroactively [which it does not], it cannot constitutionally be applied in such a manner to disturb vested rights.
We therefore hold that Act 314 of 1978 clearly vested in the Pillows, whose suit was pending on July 10, 1978, the substantive right to be paid fair market value for their property which was appropriated by resolution and notice prior to July 10, 1978. Under the 1978 Act they had a vested right which could not be constitutionally divested by Act 676 of 1979.
The cause of action and its elements [here compensation for fair market value granted to those with suits pending on July 10, 1978] are clearly substantive. It is settled that substantive laws are nonetheless substantive because they apply to facts occurring prior to their enactment so long as they have the effect of creating, defining, or regulating rights. See State v. Alden Mills, 202 La. 416, 12 So.2d 204 (La.1943); Churchill Farms, Inc. v. Louisiana Tax Commission, 338 So.2d 963 (La.App. 4th Cir. 1976).
La.R.S. 1:2 which provides that "No action of the Revised Statutes is retroactive *1277 unless it expressly so states" is authority for the retroactive application of Act 314 to the Pillow claim. See also Marston v. Red River Levee and Drainage District, 632 F.2d 466 (5th Cir.1980).
Our finding that Act 314 of 1978 accorded retrograde substantive rights to Pillow as a member of its applicable class obviates any necessity for further discussion or interpretation of Act 676 of 1979 and its applicability to the instant case because it cannot be interpreted in any respect constitutionally to divest Pillow of vested rights under La. Constitution Article I § 23 (1974) and the 14th Amendment and Article I § 10 of the United States Constitution. It is well settled that where an injury has occurred for which an injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process. Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381 (La.1978). Were a court to give meaning to a later amending statute doing away with a vested cause of action, it would be violating the Constitution by giving an unconstitutional interpretation to the statute. Green v. Liberty Mutual Insurance Co., 352 So.2d 366 (La.App. 4th Cir.1977); Churchill Farms, Inc. v. Louisiana Tax Commission, supra.
Counsel for Pillow also strenuously argues that notwithstanding the applicability of Act 314 of 1978 to the Pillows' claim, the Pillows would also be entitled to fair market value compensation for their property under the provisions of La.R.S. 38:301 et seq. Because of our holding regarding the applicability of Act 314 of 1978, we pretermit any discussion of the applicability of La.R.S. 38:301 to this case.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, the Levee Board contends that the trial court erred in calculating the amount of property actually taken as well as the value thereof. It is further contended that the award of damages exceeded the range of damages presented by expert testimony and that there was not sufficient evidence presented to support the highest and best use determination made by the trial court and its award of severance damages.
In order to properly address the issues presented in this assignment of error, it is necessary that we first describe in some detail the affected property and its characteristics.
The property made the subject of this suit and depicted in the following map is known as Willow Glenn Plantation and is located in Madison Parish approximately 14 miles southeast of Tallulah and 3.5 miles west of Vicksburg, Mississippi. It is described as a medium sized cotton plantation with a gross acreage of approximately 792 acres. As depicted by the map, the property is somewhat rectangular in shape and traverses a peninsula of the Mississippi River causing it to be bounded on both its North and South boundaries by the river.
*1278 
*1279 Madison Parish is an agriculturally oriented community which includes several small towns and the city of Tallulah. The parish has the advantage of its location on the Mississippi River as well as the location of Interstate Highway 20, the region's major east-west traffic artery. There has been significant activity as a result of recent industrial expansion plans along the Mississippi River in the parish which tend to evidence positive signs for the parish which has had relatively slow economic growth over the past several decades.
Willow Glenn is within a neighborhood which is agriculturally oriented. It has seen a fairly large increase in land values over the last several years. Sandy loam soil types in the area are very rich for the production of numerous crops and are particularly well suited for cotton production. Access to the plantation is obtained easily over the Delta Interchange with Interstate Highway 20 and U.S. Highway 80, both running through the tract in an east-west direction.
At the time of the taking made the subject of this suit, Willow Glenn was a thriving cotton plantation producing an above average yield of cotton per acre. While some of the plantation's success must be attributed to the management of Dudley Pillow, Jr., the particular tract of land is very fertile and productive.
In 1978, at the request of the U.S. Corps of Engineers in connection with its levee enlargement project, the Levee Board took in excess of 100 acres of land belonging to the Pillows to enlarge the levees on both the north and south ends of the property. The size of the already existing levee was increased greatly and huge borrow pits were dug to provide the dirt for the levee's expansion.
The Levee Board contends that the acreage calculations made by the trial court in connection with the northernmost taking on the river side should be re-computed by this court because of an error made in calculation. This argument is addressed to a certain 75.4 acre tract identified by the surveyor, James E. Morse. Morse calculated the various acreages actually taken by the use of scale checked aerial photography, a method accepted by the engineering profession as accurate. The areas actually taken as described by Morse are:
1) 75.4 acres taken for borrow pits on the north end of the tract lying riverside of the levee [This is the area complained of at this point];
2) 10.8 acres taken for levee enlargement and berm on the north end of the tract lying landside of the levee;
3) 9.474 acres taken for levee enlargement or berm on the north end of the tract lying landside of the levee; and
4) 12.0 acres taken for levee enlargement or berm on the south end of the tract lying riverside of the levee.
Although counsel for the Levee Board questioned Morse at trial about the accuracy of these measurements, it is noteworthy and the trial court noted that the Levee Board offered no evidence to contradict his calculations nor did it offer the court any better measurement. Thus, we conclude the trial court was not in error in accepting his computations in arriving at the acreage actually taken and finding that 75.4 acres were taken for borrow pits on the north end of the property on the riverside.
The Levee Board also contends that the trial court erred in awarding damages which exceeded by $13,655 the highest total values of damages assigned by any of the three appraisers. It argues that those findings amount to a substitution by the trial court of its judgment for that of the experts as to the upper limits of damages which is prohibited. We disagree.
Three appraisals were available for the trial court's consideration, two offered on behalf of Pillow and one offered on behalf of the Levee Board. Pillow's appraisers testified at trial and by stipulation of the Levee Board's appraiser's report was submitted for the trial court's consideration. Each of the appraisers assigned different values to the different portions of the property taken.
*1280 Charles E. Wilkes, who prepared the appraisal report for the Levee Board assigned the following values to the property actually taken:

Land Side of Levee: ...................
 11.3 Acres at $1,250 per acre....... $ 14,125.00
River Side of Levee:...................
 80 Acres at $2,350 per acre......... 188.000.00
 ___________
Total Compensation Item # 442-R-A $202,125.00
Land Side of Levee: ...................
 9.29 Acres at $1,250 per acre....... 11,612.50
River Side of Levee:...................
 11.6 Acres at $150 per acre......... 1.740.00
 __________
Total Valuation Item $436-R-A.......... 13,352.50
Value of Improvements Taken............ -0-
 __________
Total Value of Property and
 Improvements Taken.................. 215,477.50
 Rounded to $215,478.00

The following values were assigned by William P. Williams, one of the Pillows' appraisers:

North riverside (75.4 acres):
 62.9 ac. at $3,250 per ac. ($3,500 per
 ac. less residual value of $250) $204,425.00
12.5 ac. at $750 per ac. ($1,000 per
 ac. less residual value of $250) 9,375.00
North landside:
 10.8 ac. at $2,250 per ac. ($2,500 per
 ac. less residual value of $250) 24,300.00
South landside:
 9.474 ac. at $1,550 per ac. ($1,800
 per ac. less residual value of $250) 14,684.70
South riverside:
 12.0 ac. at $350 per ac. ($600 per ac.
 less residual value of $250) 4.200.00
 __________
TOTAL VALUE OF LAND TAKEN $256,984.70

Malcolm C. Sevier, the other appraiser who testified on behalf of the Pillows, assigned the following values to the land actually taken:

North Riverside 75.4 acres:
 57.0 ac. at $3,100 per ac. ($3,400 per
 ac. less residual value of $300) 176,700.00
18.7 ac. at $300 per ac. ($600 per ac.
 less residual value of $300) 5,520.00
North Landside:
 10.8 ac. at $3,100 per ac. ($3,400 per
 ac. less residual value of $300) 33,480.00
South Landside:
 9.474 ac. at $1,000 per ac. ($1,200
 per ac. less residual value of $200) 9,474.00
South Riverside:
 7.7 ac. at $250 per ac. ($450 per ac.
 less residual value of $200) 1,925.00
 4.3 ac. at $250 per ac. ($450 per ac.
 less residual value of $200) 1.075.00
 ___________
TOTAL VALUE OF LAND TAKEN $228,174.00

After hearing all of the evidence, the trial court assigned the following values as to the land actually taken:

 Number of
Number of Acres Dollars Assigned
62.9 acres of north riverside of the levee
at $3,250 per acre (being $3,500 per acre
less $250 per acre residual value) $204,425.00
 (per Mr. Williams)
12.5 acres north riverside of the levee at
$750 per acre (being $1000 per acre less
$250 per acre residual value) 9,375.00
 (per Mr. Williams)
10.8 acres north end landside of the levee
at $3,100 per acre (being $3,400 per acre
less $300 per acre residual value) 33,480.00
 (per Mr. Sevier)
12 acres on the south end riverside of the
levee at $350 per acre (being $600 per acre
less $250 per acre residual value) 4,200.00
 (per Mr. Williams)
9.474 acres on the south end landside of
the levee at $1,550 per acre (being $1800
per acre less $250 per acre residual value) 14,685.70
 (per Mr. Williams)
TOTAL VALUE OF PART TAKEN $266,164.70

It is apparent from the foregoing, that the trial court accepted certain portions of the testimony of Williams and one portion of the testimony of Sevier in arriving at its valuation of the property actually taken. It obviusly chose to not accept the values ascribed to any of the parcels by Wilkes. The trial court's award as to each separate portion or tract was based on competent opinion evidence; therefore, it cannot be said to have substituted its opinion for the opinions of the experts. Because the property taken was composed of a number of different parcels and types of land, we find that such a determination was not manifestly erroneous nor was it an abuse of discretion.
Lastly, in connection with the award of damages, the Levee Board argues that the trial court's finding of highest and best use for industrial purposes was erroneous, urges acceptance of its appraisers values and urges rejection of any severance damages. The Levee Board correctly recognizes that in order for us to overturn such findings of fact we must find that the trial *1281 court was manifestly erroneous. The value of expropriated property is solely a question of fact and such a finding is accorded the same weight as any other finding of fact. Louisiana Resources Co. v. Greene, 406 So.2d 1360 (La.App. 3d Cir.1982). Thus, the manifest error rule applies. When conflicting estimates on the question of value are presented, the appellate court will uphold the trier of fact unless a determination of that value is demonstrated to be obviously or manifestly erroneous. Southern Natural Gas Co. v. Sutton, 406 So.2d 669 (La.App. 2d Cir.1981). Furthermore, the trial court can give whatever weight it deems to be appropriate to any and all witnesses in making the factual determination of value. State, Dept. of Highways v. Society for the Propagation of the Faith, 321 So.2d 388 (La.App. 1st Cir.1975). Finally, when a valuation is supported by the evidence, it cannot be clearly erroneous. State, Department of Highways v. Ramano, 316 So.2d 129 (La. App. 1st Cir.1975).
All three appraisers agreed that the property lying riverside on the North end of the Pillow tract had added value as potential industrial property. However, Williams and Sevier felt that the property landside of the levee on the North end of the tract also had added value for industrial, commercial, and subdivision purposes while Wilkes valued that property for agricultural purposes. Each of the appraisers used a market data or comparable land sales approach in arriving at final values and the highest and best use. It is obvious again that the trial court chose to again reject the analysis and opinion of Wilkes.
While the award for the property actually taken is somewhat on the high end of the spectrum, we conclude that there is a sufficient basis in the record to support such an award. The trial court was not manifestly erroneous in its total award of $266,164.70 for the value of the property actually taken because the values established by Williams and Sevier are within a reasonable range.
However, a more serious problem is presented with regard to the award of severance damages. Severance damages are those damages to the remaining property caused by the use to which the property taken has been put; it is well settled that they are compensable. Central Louisiana Electric Co. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369 (La.App. 1st Cir.1961). These damages relate to two parcels of land, one 24.9 acre strip of land located north of the levee and one 169.5 acre parcel of land located between the north levee and the railroad.
The first strip is a narrow strip of land lying adjacent to the river on the northside which comprises 24.9 acres and has a usuable average depth of approximately 300 feet. It is separated from the remainder of the property by borrow pits and its only access is a narrow dirt road between two of the borrow pits. Williams and Sevier were of the opinion that the insufficient dept of this long, narrow strip of land after the taking rendered it useless as an industrial site because of its elongated, narrow shape and its limitation of access. Williams was of the opinion that of the remaining 24.9 acres, 20.1 acres had been reduced from industrial potential to limited access farm land and had sustained damage of $2500 per acre. It was also his opinion that the remaining 4.8 acres sustained damage of $750 per acre making the total damage to the north remainder adjacent to the river $42,330. Sevier considered the entire 24.9 acres as being reduced to one-half its previous value or damaged in the amount of $53,850. Even Wilkes admitted that first indications might lead a reasonable person to assume that this is an insufficient depth for industrial use although he concluded ultimately that the remaining strip suffered no damages.
The trial court fixed the damages for this particular remainder at $2000 per acre of $49,800. Even though this award may be slightly high, we are not prepared to hold that it is clearly erroneous because the record supports a finding that this particular tract of land had diminished ability to compete with other potential industrial sites because of its peculiar elongated shape and narrow depth bordered on both its north *1282 and south perimeters by water, i.e., the river and the borrow pits.
Williams and Sevier were also of the opinion that the 169.5 acre tract lying between the north levee and the Illinois Central Gulf Railroad had been damaged. Their reasoning was that prior to the taking this area had excellent access to river frontage and would have been desirable for a plant site or for residential and commercial development in conjunction with a riverside development. It was the opinion of Sevier that this tract was damaged to the extent of $600 per acre or $101,700. Williams was of the opinion that it was damaged to the extent of $500 per acre or $84,750. Wilkes was of the opinion that it had not been damaged at all because it was still susceptible of use for agricultural purposes.
The trial court awarded damages to this particular tract in the amount of $550 per acre or $93,225. Our review of the record in regard to this award leads us to conclude that the trial court was clearly wrong in the amount of the award of severance damages for this particular tract. This tract continues to be of sufficient size for either commercial or industrial development. It continues to have access to Interstate 20 at the Delta Interchange, to U.S. Highway 80 and the Illinois Central Gulf Railroad. There is still access to the river, although it is admittedly diminished. Weighing all of these factors, we conclude that such an award in this instance is excessive because it was not proven to a legal certainty that the use to which the property taken has been put has diminished or decreased the market value of this particular tract to this degree.
We are not convinced from our review of the evidence that this property cannot still be used for commercial, industrial, and/or residential purposes in the future. However, we recognize that its use has been somewhat diminished for industrial purposes because of its limited access to the river. We conclude that $100 per acre will adequately compensate for this dimunition. Because the trial court was clearly wrong in its finding in regard to this particular award of severance damages, we amend the judgment to decrease the severance damages for this particular tract to $100 per acre or $16,950.

ASSIGNMENT OF ERROR NO. 5
The Levee Board finally contends that the trial court erred in awarding an amount of attorneys fees based on a percentage of the judgment instead of fixing a reasonable fee. It is additionally contended that the trial court was in error in allowing interest on attorneys' fees which award itself was based partially on interest on the judgment.
La.R.S. 13:5111 provides for the assessment of attorneys' fees in this case and states:
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as part of the costs of court, such sum as will, in the opinion of the court compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.
B. The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12, 1975. [Emphasis added.]
The portion of the trial court's judgment complained of in relation to this assignment of error reads as follows:

*1283 ... together with thirty-three and one third per cent (331/3%) of the principal and interest thereon until paid as attorneys' fees, plus twelve per cent (12%) per annum interest until paid on the attorneys' fees due as of the date of the signing of this judgment, and for all other costs of these proceedings.
The Levee Board argues that a reasonable interpretation of "actually incurred" would preclude the award of a percentage of the recovery because this language of the legislature embodies its attempt to require that the fee be earned by the attorney. It further argues that such an awardable fee should depend on time spent rather than the contractual arrangement between attorney and client. It finally argues that "such proceeding" referred to by the statute would be the case before the court and would not embrace the class action from which this ordinary action was converted.
Our reading of the statute causes us to conclude that it provides for reasonable attorneys' fees actually incurred. In this case, the fees actually incurred by plaintiffs were one-third of the amount recovered by virtue of a contingent fee contract between the Pillows and their attorneys. Thus, the issue presented for resolution is the reasonableness of the fee incurred in this particular case.
Our careful review of the record makes us painfully aware of the complexity of the issues presented as well as the far reaching implications of their resolution to the Pillows as well as the remaining litigants whose claims were severed for the purposes of this trial. It goes without saying that the ultimate resolution of this case will in effect have a direct bearing on the claims of at least forty other litigants whose property rights have been affected by this particular expansion project of the Levee Board and the U.S. Corps of Engineers. Thus, it was necessary that these issues be thoroughly and painstakingly presented to the trial court for its consideration in this week long trial.
There is no question but that this was done by counsel for the Pillows and was done extremely well. The record reflects that this case was meticulously and thoroughly presented by highly professional, prepared attorneys. Their degree of skill and preparation is certainly reflected in the record.
We are further aware of the extensive pre-trial proceedings, including at least three writ applications to this court and the Supreme Court initiated on behalf of the Levee Board. The record reflects that over 2300 hours were spent by counsel for the Pillows collectively in connection with the litigation. While admittedly this factor alone is insufficient to determine the reasonableness of the fee, it is certainly one of the factors to be considered. Other factors we have considered in evaluating the reasonableness of this fee are the ultimate result obtained, the responsibility incurred, the importance of the litigation, the amount involved, the extent and character of the labor performed, the legal knowledge, attainment and skill of the attorneys, the number of appearances made, the intricacies of facts and law involved, the diligence and skill of counsel, the court's own knowledge of the case and the ability of the party liable to pay. Guillory v. Guillory, 339 So.2d 529 (La.App. 4th Cir.1976).
After considering all of these factors, we conclude that the trial court's award of one-third of the award of damages as attorneys' fees is not unreasonable and will be upheld because in making such an award the trial court did not abuse the great discretion with which it is vested in making such awards and this award was not manifestly excessive. Consolidated Sewerage District of the City of Kenner v. Schulin, 387 So.2d 1369 (La.App. 4th Cir.1980); State, Department of Highways v. Terrebonne, 349 So.2d 936 (La.App. 1st Cir.1977). Even conceding that the Pillows are not entitled to reimbursement for attorneys' fees incurred as a result of the attempted class action, we conclude that the one-third fee on the principal awarded is reasonable, was actually incurred, and should be maintained.
*1284 Although there is nothing in our law which precludes the awarding of attorneys' fees based on a contingent fee contract, or on a percentage of the amount recovered, we are not prepared to hold and do not hold in this case that in an expropriation case, contingent fees are approved per se. We limit our holding to our finding that under the particular facts and circumstances of this case, that such an award was not unreasonable, clearly wrong or an abuse of the trial court's wide discretion.
However, we conclude that the award of interest on the attorneys' fees due is not provided for by La.R.S. 13:5111 and was erroneously awarded. The applicable statute provides that such an award be "as a part of the costs of court." Powell v. Department of Highways, 383 So.2d 425 (La.App. 4th Cir.1980). It is well settled that interest is not allowable on that portion of a judgment representing costs. DeLizardi v. Hardaway, 8 Rob. 20 (La.1844).
Accordingly, we amend the judgment to delete the interest on the attorneys' fees.
For the foregoing reasons, the judgment appealed from is amended and the following pertinent paragraphs are recast to read:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiffs, Dudley B. Pillow, Jr., individually and as Trustee of the Dudley B. Pillow Sr. Family Trust; Mrs. Lois Pillow Robertson, as Trustee of the Dudley B. Pillow Sr. Family Trust; and Watson McDonald Pillow as Trustee of the Dudley B. Pillow Sr. Family Trust and against the defendant, Board of Commissioners for the Fifth Louisiana Levee District, for the sum of $332,914.70 together with interest thereon at the rate of seven percent per annum from, July 6, 1978 until September 11, 1980; at the rate of ten percent per annum from September 12, 1980 until September 10, 1981; and at the rate of twelve percent per annum from September 11, 1981 until paid; together with thirty-three and onethird (331/3%) of the principal or $110,971.57 as attorneys' fees to be taxed as costs and for all costs of these proceedings.
As amended, the judgment is affirmed with the costs of this appeal to be divided equally between the parties.
AMENDED, and as amended, AFFIRMED.
NOTES
[1] We note other bases for the exceptions of no cause of action and no cause and/or no right of action but do not address these because the Levee Board has apparently abandoned these exceptions in this appeal.
[2] Article XVI § 6 of the Louisiana Constitution of 1921 continued in effect as a statute under the provisions of the 1974 Constitution, Article VI, § 42.
[3] A writ application is presently under consideration by the Louisiana Supreme Court in this case.