PRICE, Judge Pro Tempore.
The Board of Commissioners for the Fifth Louisiana Levee District (hereinafter referred to as “Levee Board”) appeals a judgment of the district court awarding Robert Burney Long, Anna Long Case, and Jane Long Stuart (hereinafter referred to as the “Longs”) $214,525.00 as the fair market value of property taken for a levee servitude, attorneys’ fees in the amount of $71,508.33, and expert witness fees of $16,-865.00.
FACTS
The Longs were originally among the petitioners in a class action suit brought against the Levee Board seeking redress as to all property taken or damaged by the Levee Board without proper exercise of expropriation. In Pillow v. Board of Commissioners for the Fifth Louisiana Levee District, 369 So.2d 1172 (La.App. 2d Cir.1979), writ denied 373 So.2d 525 (La.1979), this court determined that the class action was not allowable.
On June 9, 1980, the plaintiffs in the original class action filed an amended petition transforming the class action seeking *46 declaratory relief to an ordinary proceeding seeking just compensation and damages, including the fair market value of property taken, appropriated, used or destroyed for levee or levee drainage purposes, and for all damages to the full extent of the losses occasioned by the appropriation of plaintiff’s property, including interest, attorney’s fees, expert’s fees, and all costs.
This is the second ease to reach this court on appeal after denial of the class action. In Pillow v. Board of Commissioners, 425 So.2d 1267 (La.App. 2d Cir.1982) this court amended the district court’s judgment awarding damages to Dudley Pillow and as amended, affirmed.
The Longs are the owners of a large area of land in Madison Parish known as Grand-view Plantation which essentially surrounds the Village of Delta and is located directly across the Mississippi River from Vicksburg, Mississippi. The property covers a portion of a peninsula created by the Mississippi River. The Mississippi River bounds Grandview to the north and east while tracts of land owned by Dudley B. Pillow and the St. Francisville Paper Company form the western and southern boundaries. At trial, the parties stipulated that the property taken by the Levee Board was not batture and it was agreed that the total land taken was 85.50 acres, of which 13.75 acres was on the protected or “land-side” and the remainder was on the unprotected or “riverside” portion of the property. This land was appropriated by the Levee Board acting in concert with the U.S. Corps of Engineers and the Louisiana State Department of Public Works in conjunction with a project for the reconstruction, raising, enlargement, repair, relocation, realignment, widening, and improvement of the levee along the right descending bank of the Mississippi River from the Arkansas state line on the north to the southern most limits of the Levee Board’s jurisdiction in Madison Parish.
This court has previously found that the plaintiffs in this action against the Levee Board were entitled to be compensated at the fair market value for the land appropriated. See Pillow v. Board of Commissioners, 425 So.2d 1267 (La.App. 2d Cir.1982). In the present case the district court found that fair market value of 13.75 acres on the landside of the levee was $162,625.00. The court found that the appropriation of 71.75 acres on the riverside of the levee to have a fair market value of $51,900.00. Additionally, the court found that the Longs were entitled to reasonable attorneys’ fees in the amount of $71,508.33, one-third of the judgment, and also awarded expert witness fees. On appeal, the Levee Board asserts the following assignments of error:
1. The Levee Board was precluded from contesting the ownership of the property taken.
2. Evidence of prior payment for previous appropriations was improperly excluded by the trial court.
3. The trial court granted excessive damages for landside and riverside areas taken for levee improvement.
4. The trial court allowed the $7,430.92 fee of Luther Holloway as an expert witness to be taxed as a cost.
5. The trial court, in awarding excessive attorneys’ fees of $71,508.33 failed to require the plaintiff’s to show that those fees were actually incurred because of such proceedings; accorded the unsigned and undated retainer agreement designated P-33 unwarranted dignity; and allowed attorney fees significantly in excess of those allowed under the Disciplinary Rules of the Code of Professional Responsibility.
ASSIGNMENT OF ERROR NO. 1
At trial, the Levee Board challenged the Longs’ ownership of the property taken on the riverside by attempting to establish that portions of the land were actually vested in the Illinois Central Gulf Railroad. By this assignment, the Levee Board contends that it was precluded from contesting ownership of the property appropriated.
*47 Under LSA-R.S. 38:281, only the owner of the land taken for levee purposes is entitled to compensation. The Longs contend that the pleadings, stipulations, and evidence adduced at trial establish that they are the sole owners of those portions of the Grandview Plantation taken by the Levee Board. The Levee Board contends that it did not admit ownership of the appropriated property in its answer to the petition. The Levee Board also contends that although it stipulated to the amount of acreage taken for levee purposes, it did not stipulate that the Longs were the owners of the land taken.
We agree with the Levee Board that the ownership of the property taken was not admitted in the Levee Board’s answer to the Longs’ amended petition. We also find that the stipulations made at the commencement of the trial did not concede ownership to the Longs. The stipulation merely conceded the number of acres actually taken.
LSA-C.C.P. Art. 3654 provides as follows:
When the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belonged to the owner of the immovable property or of the real right therein is so presented, the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription; or
(2) Who proves better title to the immovable property or real right therein, when either party would be entitled to the possession of the immovable property or real right therein in a possesso-ry action.
The undisputed testimony of Bur-ney Long reflects that the Longs have been in possession of the property including all riverside accretions for well over thirty years. Mr. Long testified that his family had farmed the accretions, paid taxes on the property, sold dirt and timber from the property, and were unaware of any adverse claims to any portion of Grandview. We find that the testimony of Mr. Long was sufficient to meet the requirements of LSA-C.C.P. Art. 3654 and would meet the requirements for maintaining a possessory action.
Although the Levee Board complains of the trial court’s refusal to allow the introduction of certain evidence tending to place doubt on plaintiffs’ title, this evidence which was proffered, is not sufficient to overcome the showing made by the testimony of Mr. Long.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
By this assignment, the Levee Board contends that evidence of prior payment for previous appropriations was improperly excluded by the trial court. The Levee Board sought to introduce evidence that certain areas of the land had already been appropriated as levee servitudes in the years of 1932 or of 1944. Accordingly, the Levee Board took the position that the Longs have been duly compensated for certain portions and are not now entitled to additional payment.
The trial court found that the attempt by the Levee Board to introduce evidence of prior payment for prior appropriations constituted an affirmative defense. The court further found that the Levee Board did not affirmatively set forth in its answer that the Longs’ right to compensation had been extinguished by the prior payment.
The affirmative defense of the ex-tinguishment of the obligation in any manner must be affirmatively pleaded. LSA-C.C.P. Art. 1005. By seeking to prove pri- or payment for lands previously taken, the Levee Board was challenging the Longs’ *48 right to compensation by extinguishment of obligation. The Levee Board did not assert this defense in its answer. Therefore, the trial court properly excluded the evidence.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3
By this assignment, the Levee Board contends that the trial court erred in its determination of the fair market value of the property appropriated.
At trial, the parties stipulated the location and acreage of the property appropriated. The stipulation is as follows:
LANDSIDE (Protected)
Berm 10.00 acres
(located on the north property line)
Drainage Ditch 3.75 acres
13.75 acres
RIVERSIDE (Unprotected)
Borrow Pits:
North 31.45 acres
South 27.55 acres
Berms:
No. 1 (north of U.S. 80 bridge) 3.50 acres
No. 2 (between U.S. 80 and 1-20) 6.30 acres
No. 3 (south of 1-20 bridge) 2.95 acres
71.75 acres
TOTAL AREA APPROPRIATED
BY LEVEE BOARD 85.50 acres
The Longs presented the testimony of two appraisers, William P. Williams and Malcom C. Sevier. The Levee Board presented the testimony of one appraiser, Charles E. Wilkes. The area with the largest disparity in valuation among the appraisers is the landside portion of the property. The appraisers for the Longs placed a much greater value on the landside portion than did the Levee Board appraiser. The conclusions of the three appraisers were set forth as follows:
WILLIAM P. WILLIAMS
Landside:
13.75 acres
@ $12,000.00 per acre $165,000.00
Riverside:
71.75 acres
@ $700.00 per acre $ 50,225.00
TOTAL $215,225.00
MALCOLM C. SEVIER
Landside:
10 acres (Berm)
@ $9,300.00 per acre $ 98,000.00
3.75 acres (Ditch)
@ $9,900.00 per acre $ 37,125.00
Riverside:
59 acres (Pits)
@ $750.00 per acre $ 44,250.00
12.75 acres (Berms)
@ $600.00 per acre $7,650.00
TOTAL $187,025.00
CHARLES E. WILKES
Landside:
10 acres (Berm)
@ $1,150.00 per acre $ 11,500.00
3.75acres (Ditch)
0.37 acres @ $19,360 per
acre x 95% less in value $ 6,805.00
3.38 acres @ 1,600 per acre
X 50% less in value $ 2,704.00
Riverside:
59 acres (Pits)
@ $350.00 per acre $ 20,650.00
12.75acres (Berms)
No Compensation 0.00
TOTAL $ 41,659.00
Both Williams and Sevier testified that the highest and best use for landside acreage is for residential property. Wilkes found the highest and best use of all but a fraction of the landside to be agricultural with some potential for low cost residential.
The trial court found that the highest and best use of the landside portion of the property was residential and fixed a value commensurate with the Williams appraisal which was the highest of the three offered. Following the Williams appraisal, the court awarded (subject to a deduction for retention value of the berm of $200.00 per acre and $100.00 an acre for the drainage ditch) a total of $162,625.00 for the landside portion. The trial court accepted the highest appraised value on the riverside portion of the property fixed by Sevier of $51,900.00. The trial court apparently gave no weight to the appraisal of Wilkes.
*49 As this court previously found in Pillow v. Board of Commissioners, 425 So.2d 1267 (La.App. 2d Cir.1982), when conflicting estimates on the question of value are presented, the appellate court will uphold the trier of fact unless a determination of that value is demonstrated to be obviously or manifestly erroneous.
Each of the appraisers used a market data or comparable land sales approach in arriving at final value and the highest and best use. It is apparent that the trial court chose to rely upon the testimony of Williams and Sevier and rejected the analysis and opinion of Wilkes.
The opinions of Williams and Sevier differed most significantly from Wilkes concerning the 13.75 acres on the landside of the levee. While the appraisals on the riverside of the levee do differ, they do not reach the significantly different valuations as those on the landside.
While the award for the property actually taken on the riverside is somewhat high, we conclude that there is a sufficient basis in the record to support the trial court’s award of $51,900.00 for the riverside acreage.
However, insofar as the award for the landside property is concerned, we find that the trial court was clearly wrong in basing its determination solely on the Williams and Sevier estimates of value and failing to give any consideration to the opinion of the defendant’s expert Wilkes.
The Longs owned approximately 125 acres surrounding the Village of Delta at U.S. Highway 80 bridge across from Vicksburg.
Williams and Sevier opined that the highest and best use for this property at the time of the taking was for residential subdivisions or commercial sites because of its location adjacent to the Village of Delta and its close proximity and accessibility to Vicksburg over the old Highway 80 bridge. Their only comparables were sales of lots in the Wells Subdivision in the Village of Delta reflecting a price of between $2,000.00 and $3,500.00 per lot. Williams estimated the average lot in the town to be about one-fourth an acre in size. On this basis he reasoned that the landside acreage had a per acre value of $12,000.00. He concluded that the total value of the servitude on the 13.75 acres on the landside to be $165,000.00.
Sevier, who used the same comparables, found the per acre value to be $9,800.00 for the 10 acre berm on the landside of the levee. He valued the 3.75 acres used for a drainage ditch at $9,900.00 per acre. His total valuation for the 13.75 acres was $135,125.00.
Wilkes was of the opinion that the highest and best use at the time of the appropriation for the 10 acres used for a berm on the landside was for cotton cultivation with some potential for residential development. After deducting the residual used value to the Longs for pasturage of $450.00, he assigned a net value of $1,150.00 per acre for this tract.
Wilkes assigned a higher value for the 3.75 acres taken for the drainage ditch as a portion of this tract (.37 acres) he found could have been included in the site of several lots on the undeveloped side of St. Landry Street which is on the edge of the Village of Delta. He estimated a total value of $9,509.00 for this 3.75 acre tract.
The principal reason for the substantial variance in opinions as to the highest and best use of the landside property is the failure of the Longs’ experts to give sufficient consideration to the market absorption factor and to developmental costs for subdivision use. Both of the Longs’ witnesses’ opinions of value were based on an assumption that there was sufficient demand to support a residential classification of all of the Longs’ landside acreage. They contend this is a valid assumption as the property is in close proximity to Vicksburg and that there is a demand for residential lots in the vicinity of Delta with no land for sale to meet the demand.
The Levee Board’s expert was of the opinion that the demand for lots in this area is minimal and that there is other land *50 just as well situated at the Delta interchange to Interstate 20 just a mile or two to the West. Wilkes also relied on the lack of sales in the Hunter Heights Subdivision located near the river midway between Tal-lulah and Vicksburg.
Williams gave no consideration to developmental costs, such as streets, sewerage, or water in his estimate of value. Although Sevier did testify that he had considered this factor, he did not show a sufficient investigation into specific costs to support his estimate of value.
Wilkes testified that he made an inquiry to the mayor of the Village of Delta and was informed that the present sewerage system of the village was overloaded.
Wilkes’ opinion was based on specific inquiries as to availability of sewerage connections and cost estimates of street construction and water lines.
It was therefore clearly erroneous for the trial court to give no weight to the opinion of the Levee Board’s appraiser who utilized all of these factors in formulating his estimate of fair market value and to rely entirely on the opinions of appraisers who failed to do so.
This court has previously approved an award for $3,100.00 per acre for landside acreage on the adjoining lands owned by Dudley Pillow. See Pillow v. Board of Commissioners for the Fifth Louisiana Levee District, 425 So.2d 1267 (La.App. 2d Cir.1982). The Pillow land was found to have a highest and best use for cotton cultivation with a residential potential because of its location near the Interstate 20 interchange. While it has been shown that the subject tract has some slight advantage over the Pillow land because of being adjacent to the Village of Delta, the two tracts appear to otherwise be of equal value.
We are of the opinion that an upward adjustment of $1,900.00 per acre to the per acre value approved in Pillow would adequately compensate for the advantage of location of the subject property. We find the sum of $5,000.00 per acre for the 13.75 acre landside taking for a total of $68,750.00 is adequate compensation for the landside property taken.
ASSIGNMENT OF ERROR NO. 4
By this assignment, the Levee Board contends that the trial court erred in awarding an expert witness fee to Luther Holloway of $7,430.92.
The Levee Board contends that Luther Holloway was never qualified as an expert and that his testimony was useless due to the fact that the parties stipulated that the land involved was not batture and that his field of expertise is not included within the purview of LSA-R.S. 13:5111.
The award of expert witness fees is generally within the sound discretion of the trial court. An expert fee should be awarded to compensate an expert whose services form the basis of a stipulation at the time of trial. State through the Department of Highways v. Bougere, 363 So.2d 228 (La.App. 4th Cir.1978).
The testimony of Holloway at the trial was largely unnecessary due to the fact that the parties did stipulate that the land appropriated was not batture. In view of the fact that it was necessary for Holloway to prepare prior to trial and prior to the stipulation, we find that the trial court correctly compensated the expert. While the award appears to be high, the Levee Board does not contend that the award is excessive. Therefore, we find no abuse of the trial court’s discretion. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 5
By this assignment, the Levee Board contends that the award by the trial court of attorneys’ fees of one-third of the judgment is in excess of reasonable attorneys’ fees actually incurred because of the proceeding as allowed by LSA-R.S. 13:5111.
LSA-R.S. 13:5111 provides as follows: A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the State of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, *51 for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. ...
Without assigning reasons, the trial court awarded attorneys’ fees of one-third of the recovery as cost without interest. No testimony was adduced at trial concerning the Longs’ attorneys’ fees. However, the record does contain the retainer agreement between the attorneys and the Longs. Additionally, the attorneys submitted affidavits of hours spent through September 26, 1982.
In Pillow, this court affirmed an attorneys’ fee award of one-third of the judgment as cost actually incurred. However, this court specifically held that contingent fees are not approved per se. The court specifically limited its holding to a finding that under the particular facts and circumstances of the case in Pillow, such an award was not unreasonable, clearly wrong, or an abuse of the trial court’s discretion.
As this court stated in Pillow, “our reading of the statute [LSA-R.S. 13:5111] causes us to conclude that it provides for reasonable attorneys’ fees actually incurred.” The Longs entered into a contract with the attorneys by which the attorneys are entitled to receive one-third of the amount recovered. The contract between the Longs and their attorneys is not binding upon the court or the Levee Board. LSA-R.S. 13:5111 specifically provides that the award will be “such a sum as will, in the opinion of the court, compensate for reasonable attorneys’ fees actually incurred.” Thus, the issue presented for resolution is whether the one-third contingent fee is a reasonable fee in the opinion of the court in this proceeding.
Our review of the record indicates that a contingent fee award of one-third of the amount recovered does not reflect a reasonable attorney fee. The contingent fee award was affirmed in Pillow due to the fact that the record reflected that 2300 hours had been spent by the counsel and because of the important issues involved in the litigation of that case. It is apparent that a substantial part of the attorneys’ time in Pillow was spent on the issue of whether the landowner should be compensated for fair market value rather than the assessed value for advalorum taxes. This issue is common to the instant case and the other cases cumulated with the Pillow case. The difficult issue faced by the attorneys in Pillow regarding the standard for measuring compensation was no longer a viable issue in this case.
Since the affidavits submitted by the attorneys in the instant case do not show clearly that there is not any duplication in the instant claim for payment for time spent on issues for which they were previously compensated in Pillow, we find it necessary to remand the case for further evidence to clarify this question.
On remand, the attorneys for the Longs shall submit to the court evidence of actual, necessary hours spent in the representation of the Longs- in this proceeding. The trial court shall not award attorneys’ fees in this proceeding for hours which were expended and an award made therefore in Pillow.
DECREE
The judgment appealed is affirmed insofar as it orders that the plaintiffs, Robert Burney Long, Anna Long Case, and Jane Long Stuart, be compensated for the fair market value of the property appropriated by the Board of Commissioners for the Fifth Louisiana Levee District. The judgment awarding the sum of $214,525.00 is amended to reduce the sum awarded to $120,650.00. The award of expert fees is affirmed. The judgment awarding attorneys’ fees in the sum of $71,508.33 is reversed and set aside, and this cause is remanded for a reassessment of attorneys’ fees in accordance with the instructions set forth in this opinion. Costs of this appeal are assessed to the Levee Board insofar as *52 costs may be assessed against it according to law.
AFFIRMED IN PART, AMENDED, REVERSED IN PART, AND REMANDED.